**Charles HEIT, Plaintiff,**

v.

**Edward H. WEITZEN et al., Defendants.**

**Betty VOLK, Plaintiff,**

v.

**Edward H. WEITZEN et al., Defendants.**
**No. 65 Civ. 1942.**

United States District Court
S. D. New York.
June 10, 1966.

Battle, Fowler, Stokes & Kheel, New York City, for defendant Tyminski. Theodore W. Kheel, Raymond F. Gregory, Joel M. Walker, New York City, of counsel.

Arthur Lichtenstein, New York City, for plaintiffs. Pomerantz, Levy, Haudek & Block, Stephen R. Steinberg, Richard M. Meyer, New York City, of counsel.

Cahill, Gordon, Reindel & Ohl, New York City, for defendant Grant. John F. Sonnett, Immanuel Kohn, David R. Hyde, New York City, of counsel.

Carter, Ledyard & Milburn, New York City, for defendants Weitzen and Fischer.

Kostelanetz & Ritholz, New York City, for defendant Belock. Boris Kostelanetz, Edward J. Daus, New York City, of counsel.

## OPINION

SUGARMAN, District Judge.

Charles Heit (Heit) as plaintiff in 65 Civil 1942 and Betty Volk (Volk) as plaintiff in 65 Civil 2303 each commenced an action against defendants Weitzen, Tyminski, Silverstein, Grant, Levy, Fischer and Belock Instrument Corporation (Belock), seeking damages alleged to have been sustained by each plaintiff in purchasing securities of defendant Belock. In due course the actions were consolidated and a "consolidated amended complaint" (the complaint) was filed on November 19, 1965.

The complaint bases jurisdiction on § 22(a) [1] of the Securities Act of 1933 (the 1933 Act), § 27 [2] of the Securities Exchange Act of 1934 (the 1934 Act) "and the principles of pendent jurisdiction", as an action arising under §§ 12(2) [3] and 17(a) [4] of the 1933 Act and §§ 9(e) [5], 10(b) [6] and 18(a) [7] of the 1934 Act, "the General Rules and Regulations promulgated under both statutes; and under common-law principles".

The facts alleged are that plaintiff Volk and plaintiff Heit is each "a security holder of defendant Belock", Volk having purchased 100 shares of Belock's common stock on April 22, 1965 and another 100 shares of Belock's common stock on April 27, 1965, all at $5½ per share and Heit having purchased $5,000 face amount of Belock's 6% convertible subordinated debentures on June 18, 1965 at a price of 90% of the face amount.

Volk, although as aforesaid, she alleges that she acquired her stock on April 22 and April 27, 1965, sues on her own behalf and on behalf of all other persons who purchased Belock's common stock between April 30, 1964 and June 21, 1965 and "who have either sold or continue to hold such stock at a loss" (the stock class).

Heit, although as aforesaid, he alleges that he acquired his debentures on June 18, 1965, sues on his own behalf and on behalf of all other persons who purchased Belock's debentures between April 30, 1964 and June 21, 1965 and "who have either sold or continue to hold such debentures at a loss" (the debenture class).

It is further alleged that defendants Weitzen, Tyminski, Fischer, Grant and Silverstein constituted, during the times mentioned, all or a majority of Belock's board of directors and that at all such times defendant Tyminski was Belock's president, defendant Silverstein was Belock's vice president and controller and defendant Fischer was Belock's secretary, and that Tyminski's and Silverstein's tenure terminated on August 18, 1965 by their removal as officers of Belock at which time defendant Levy was also removed as a vice president of Belock to which office he had been elected in the summer or fall of 1964.

The complaint then avers that defendant Belock, which manufactures and sells

1. 15 U.S.C. § 77v.

2. 15 U.S.C. § 78aa.

3. 15 U.S.C. § 77l.

4. 15 U.S.C. § 77q.

5. 15 U.S.C. § 78i(e).

6. 15 U.S.C. § 78j(b).

7. 15 U.S.C. § 78r(a).

precision and other instruments and components, is a New York corporation, with its principal office in Queens County, New York; that at all the times mentioned its common stock was and now is listed on the American Stock Exchange (ASE); that since February 11, 1963 its debentures (Series A) were and now are listed on said Exchange and from January 23, 1963 to June 21, 1965 its debentures (Series B) were traded on the over-the-counter market.

The complaint then charges that on or about February 4, 1965 defendant Belock, at the direction of the individual defendants, caused to be filed with the Securities and Exchange Commission (SEC) pursuant to the provisions of the 1934 Act and the General Rules and Regulations promulgated thereunder and with the ASE its annual report for the fiscal year ending October 31, 1964 and thereafter caused copies of said annual report to be sent to its security holders, the press, brokers and dealers, research organizations and financial institutions.

It is further charged by plaintiffs that the said annual report

"contained statements which were materially false and misleading and contained untrue statements of material facts in that they substantially overstated Belock's net assets and past and prospective income"

because *inter alia*

"such statements of assets and income were based in large part upon the inclusion therein of earnings, income and assets resulting from substantial overcharges to the United States Government in connection with contracts between Belock and the Government."

It is also alleged that similar materially false, misleading and untrue statements of Belock's net assets and past and prospective income were contained in reports and other documents filed by Belock at the direction of the individual defendants with the SEC and the ASE for the quarters ending April 30, July 31 and October 31, 1964, for the half year ending October 31, 1964 and for the quarter

ending January 31, 1965 and that these were released to the press and to the stockholders.

The complaint further charges that the individual defendants "had knowledge or notice" that the said reports, statements and documents "were false, misleading and contained untrue statements of material facts" and that the dissemination thereof was "intended to, and did, have the effect of artificially inflating the market prices of Belock's" securities.

After alleging that the offending data were distributed in interstate commerce, etc., the complaint charges that

"As a result of the defendants' acts * * * Belock's common stock and debentures were sold to and bought by plaintiffs and the other members of the stock class and the debenture class at artificially inflated prices substantially in excess of their value, and such value has since been further reduced on account of such acts."

Claiming that they and the other members of the two classes purchased and retained Belock's securities in reliance on the truth of the statements and representations alleged, plaintiffs aver that they thereby "sustained substantial damages".

Asserting that plaintiffs and the other members of the two classes did not, and could not by the exercise of reasonable diligence, discover the facts alleged more than a few days prior to the institution of "these actions" and the reasons for the class actions, the plaintiffs then demand judgment for damages and the expenses of the litigation.

The sufficiency of the complaint is now challenged by four motions:—One, by defendant Tyminski, pursuant to F.R.Civ.P. 12(b) (6) to dismiss the complaint for failure to state a claim upon which relief can be granted and the remaining three by defendant Grant and defendant Belock separately and defendants Weitzen and Fischer jointly, seeking relief similar to that sought by Tyminski but in addition and alternatively, under F.R.Civ.P. 56, summary judgments in favor of said defendants upon the grounds that since

plaintiffs purchased their securities at the prices stated, Belock's common stock and debentures have sold at prices in excess of that paid by each plaintiff and that plaintiffs have therefore suffered no damage.

In their memorandum in opposition to the four motions, plaintiffs make no mention of their allegations in their complaint that their suit is based on §§ 12(2) and 17(a) of the 1933 Act and § 9(e) of the 1934 Act, and, despite the arguments of defendants *inter alia* in their memoranda that those sections of the acts supply no basis for this suit, plaintiffs address themselves solely to their right to sue under §§ 10(b) and 18(a) of the 1934 Act. Since the compelling reasons stated by defendants in challenging plaintiffs' right to sue under §§ 12(2) and 17(a) of the 1933 Act and § 9(e) of the 1934 Act, are ignored by plaintiffs, it is assumed that plaintiffs have abandoned those claims.

■ It should be remembered that we are not dealing here with the enormity of the fraud alleged but simply with the question of whether plaintiffs' complaint states a claim for which redress may be had in a federal court under the federal statutes and rules relied upon.

The 1934 Act provides in § 10(b):

"**REGULATION OF THE USE OF MANIPULATIVE AND DECEPTIVE DEVICES**

Sec. 10. It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

\* \* \* \* \* \*

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as nec-

essary or appropriate in the public interest or for the protection of investors."

Rule 10b–5 [8] promulgated by the SEC pursuant to § 10(b) supra reads:

"*Rule 10b–5. Employment of Manipulative and Deceptive Devices.*

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,

(a) to employ any device, scheme or artifice to defraud,

(b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security."

The complaint alleges as operative facts simply that certain of Belock's quarterly, semi-annual and annual reports filed with the SEC and the ASE and otherwise disseminated overstated Belock's net assets and past and prospective income because they omitted disclosure that these included the product of substantial recoverable overcharges by Belock to the Government on contracts between them.

Accepting this statement as true for the purposes of this motion under F.R. Civ.P. 12(b) (6), the defendants did therefore at least "omit to state a material fact necessary in order to make the statements made \* \* \* not misleading" which Rule 10b–5(b) proscribes. However, to be unlawful and actionable, the forbidden act or omission must, under both the statute and the

rule, occur "in connection with the purchase or sale of any security".

While the complaint charges that the individual defendants "had knowledge or notice" of the misleading reports, which "artificially inflated the market prices of Belock's common stock and debentures" causing plaintiffs and the members of the two classes, relying on the statements, to purchase Belock's securities "at artificially inflated prices substantially in excess of their value" it is devoid of the statement of any facts that the fraud complained of was perpetrated by the defendants "in connection with any purchase or sale" of Belock's stock or debentures.

The fraud against the Government in overcharging it on the contract having been already accomplished, the concealment thereof from the filed statements was for the purpose of further defrauding the Government by not disclosing the original malfeasance and not for the purpose of perpetrating a "misrepresentation or fraudulent practice usually associated with the sale or purchase of securities". Birnbaum v. Newport Steel Corp., 193 F.2d 461, 464 (2d Cir. 1952), cert. denied, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952).

On the same operative facts as are presented here, Judge Cooper, in Howard v. Levine, D.C., 262 F.Supp. 643, dismissed the complaint in that action upon the grounds that

"The instant complaint is fatally defective for the allegations here do not show the gravamen of defendants' activities to be any wise 'in connection with the purchase or sale of any security' as those words have been construed in their statutory setting. Whatever fraud is alleged here (it is in bare skeletal form) is directed against the government, notwithstanding its possible incidental market impact. Furthermore, defendants or persons associated with them did not participate in the security transactions involved. Joseph v. Farnsworth Radio & Television Corp., 99 F.Supp. 701 (S.D.N.Y.1951), aff'd per curiam, 198 F.2d 883 (2d Cir. 1952). Cf. Fischman v. Raytheon Mfg. Co., 188 F.2d 783 (2d Cir. 1951); H. L. Green Co., Inc. v. Childree, 185 F.Supp. 95 (S.D. N.Y.1960). * * * "

Plaintiffs' attempt to distinguish the *Howard* complaint from this one because the former merely alleged circulation and dissemination of the offensive statements whereas the latter also alleges filing thereof with the SEC and the ASE, in so far as the § 10(b) and Rule 10b–5 aspect of the case are concerned, is an unimpressive and unpersuasive distinction without a difference.

The *Howard* complaint, *inter alia*, disclosed:

"The statements * * * were examined or certified, or both, by * * * Lybrand, Ross, [defendant-accountant firm] which knew or should have known that such * * * were incorrect and false and misleading.

* * * The publication and dissemination of the material alleged * * * served to raise or prevent the market prices from declining of the securities of Belock * * * as the defendants well knew and intended and the defendants [named] benefited therefrom.

* * * The * * * statements * * * were circulated * * * to influence and manipulate the prices of securities of Belock * * * and constituted the employment * * * of a device, scheme or artifice to defraud * * * which operated as a fraud or deceit upon plaintiff and all others similarly situated.

* * * The defendants had or were charged with knowledge of the facts alleged * * * "

As to those allegations in the *Howard* complaint Judge Cooper held:

"In addition, the allegations of fraud are legally insufficient even under a liberal construction of the pleadings afforded to plaintiffs on a motion to dismiss. O'Neill v. Maytag, 230 F. Supp. 235, 239 (S.D.N.Y.) aff'd., 339 F.2d 764 (2d Cir. 1964); Weber v.

C.M.P. Corp., 242 F.Supp. 321 (S.D. N.Y.1965). \* \* \* "

In the complaint here under consideration no more is alleged for all that is stated is that

"The individual defendants had knowledge or notice that the reports, statements and documents \* \* \* were false, misleading and contained untrue statements of material facts \* \* \* [and that] The dissemination of the statements \* \* \* was intended to, and did, have the effect of artificially inflating the market prices of Belock's common stock and debentures."

The complaint herein, to the extent that it purports to state a claim for relief under § 10(b) of the 1934 Act and Rule 10b–5 of the SEC is vulnerable.

■ As aforesaid, the complaint also states that the claims asserted therein arise under § 18(a) of the 1934 Act. In this regard it differs from the complaint in the *Howard* case which made no such claim.

Section 18(a) of the 1934 Act provides:

"LIABILITY FOR MISLEADING
STATEMENTS

Sec. 18. (a) Any person who shall make or cause to be made any statement in any application, report, or document filed pursuant to this title or any rule or regulation thereunder or any undertaking contained in a registration statement as provided in subsection (d) of section 15 of this title, which statement was at the time and in the light of the circumstances under which it was made false or misleading with respect to any material fact, shall be liable to any person (not knowing that such statement was false or misleading) who, in reliance upon such statement, shall have purchased or sold a security at a price which was affected by such statement, for damages caused by such reliance, unless the person sued shall prove that he acted in good faith and had no knowledge that such statement was false or misleading. A person seeking to enforce such liability may sue at law or in equity in any court of competent jurisdiction. In any such suit the court may, in its discretion, require an undertaking for the payment of the costs of such suit, and assess reasonable costs, including reasonable attorneys' fees, against either party litigant."

It is obvious that for the plaintiffs to prevail under this section it must appear that the reports which they claim failed to disclose the fraud against the Government were such as were "filed pursuant to this title or any rule or regulation thereunder". Regardless of what meaning the verb "filed" may have in any other context, cf. 36A C.J.S. p. 395, it has a very limited meaning under § 18(a) of the 1934 Act with respect to reports such as those here involved.

The only pertinent reports required by the statute are those mandated by § 13 (a) (2) [9] of the 1934 Act, which provides:

"Sec. 13. Periodical and other reports

(a) Every issuer of a security registered pursuant to section 12 of this title shall file with the Commission, in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate for the proper protection of investors and to insure fair dealing in the security—

\* \* \* \* \* \*

(2) such annual reports (and such copies thereof), certified if required by the rules and regulations of the Commission by independent public accountants, and such quarterly reports (and such copies thereof), as the Commission may prescribe."

Under § 13(a) (2) of the 1934 Act the SEC was vested with the power to require that annual reports be certified by independent public accountants and to

9. 15 U.S.C. § 78m.

require the filing of quarterly reports. It has exercised those powers with respect to companies such as defendant Belock only to the extent of requiring annual and semi-annual reports.[10] The annual reports are those filed on Form 10–K and the semi-annual reports are those filed on Form 9–K. The Commission's rules governing these reports in pertinent part are as follows:

(As to annual reports—Form 10–K):

"17 CFR

### Annual Reports

§ 240.13a–1 Requirement of annual reports.

Every issuer having securities listed and registered on a national securities exchange shall file an annual report for each fiscal year after the last full fiscal year for which financial statements were filed in its application for registration. * * *

§ 249.310 Form 10–K, annual report pursuant to section 13 or 15(d) of the Securities Exchange Act of 1934.

\* \* \* \* \* \*

(b) General instructions—(1) *Rule as to use of Form 10–K.* Form 10–K shall be used for annual reports pursuant to section 13 or 15(d) of the Securities Exchange Act of 1934, for which no other form is prescribed.

\* \* \* \* \* \*

(6) *Annual reports and proxy material sent to stockholders.* (i) Every registrant which files an annual report on this form shall furnish to the Commission for its information four copies of the following * * *

(a) Any annual report to stockholders covering the registrant's last fiscal year * * *

Such material shall be mailed to the Commission not later than the date on which it is first sent to stockholders * * *

(ii) The foregoing material shall not be deemed to be 'filed' with the Commission or otherwise subject to the liabilities of section 18 of the Act * * * "

(As to semi-annual reports—Form 9–K):

"17 CFR § 240.13a–13 Semi-annual reports on Form 9–K.

(a) Every issuer of a security registered on a national securities exchange which is required to file annual reports on Form 10–K * * * shall file a semi-annual report on Form 9–K * * *

\* \* \* \* \* \*

(d) Notwithstanding the foregoing paragraphs of this section, reports pursuant to this section on Form 9–K shall not be deemed to be 'filed' for the purpose of section 18 of the act or otherwise subject to the liabilities of that section * * * "

From the foregoing rules it is quite clear that none of the reports upon which the plaintiffs' claims are predicated were "filed" with the Commission as required by § 18(a) of the 1934 Act.

It follows, therefore, that the complaint herein to the extent that it purports to state a claim for relief under § 18(a) of the 1934 Act is also vulnerable.

Thus, since the complaint fails to state a federal claim upon which relief can be granted, there is no pendent jurisdiction of the state claims surviving and as Judge Cooper observed in the *Howard* case

" * * * there being no diversity jurisdiction alleged, any causes of action recognized under state law as set forth in the complaint should also be dismissed. Ruckle v. Roto American Corp., 339 F.2d 24, 27 (2d Cir. 1964) * * * "

In the light of the conclusion that the defendants' motions to dismiss the complaint must prevail, the additional and alternative motions of some of the de-

10. Quarterly reports are required to be filed by investment companies, 17 CFR § 240.13a–12, and by certain real estate companies, 17 CFR § 240.13a–15.

fendants for summary judgment are not passed upon.

The motions by defendants Tyminski, Grant and Belock severally and of the defendants Weitzen and Fischer jointly to dismiss the complaint herein pursuant to F.R.Civ.P. 12(b) (6) are granted without leave to plead anew.

It is so ordered. No further order is necessary.