Charles HEIT, Plaintiff-Appellant,

v.

Edward H. WEITZEN, Walter V. Tyminski, Stanley R. Grant, Marvin J. Levy, Jack J. Fischer and Belock Instrument Corporation, Defendants-Appellees,

and

Jack Silverstein, Defendant.

Betty VOLK, Plaintiff-Appellant,

v.

Edward H. WEITZEN, Walter V. Tyminski, Stanley R. Grant, Marvin J. Levy, Jack J. Fischer and Belock Instrument Corporation, Defendants-Appellees,

and

Jack Silverstein, Defendant.

Helen HOWARD, Plaintiff-Appellant,

v.

Stanley R. GRANT, Walter V. Tyminski, Lybrand, Ross Bros. & Montgomery, a partnership, Carl M. Loeb, Rhoades & Co., a partnership, and Belock Instrument Corporation, Defendants-Appellees,

and

Lawrence J. Levine, Jack Silverstein, Edward H. Weitzen, John F. Donato, Jack J. Fischer, Charles Welthy & Harry Ahrens, as Executors of the Estate of Helen Neuschafer, deceased, Defendants.

Nos. 162, 163, Docket 30410, 31157.

United States Court of Appeals Second Circuit.

Argued Nov. 10, 1967.

Decided Oct. 3, 1968.

910

William E. Haudek, New York City (Pomerantz, Levy, Haudek & Block, Arthur W. Lichtenstein, New York City, for plaintiffs-appellants Charles Heit and Betty Volk; and Lawrence Milberg, New York City, for plaintiff-appellant Helen Howard, on the brief), for plaintiffs-appellants.

David R. Hyde, New York City (Cahill, Gordon, Sonnett, Reindel & Ohl, New York City, for defendants-appellees Stanley R. Grant and Carl M. Loeb, Rhoades & Co.; Carter, Ledyard & Milburn, New York City, for defendants-appellees Edward H. Weitzen and Jack J. Fischer; and Mendes & Mount, New York City, for defendant-appellee Lybrand, Ross Bros. & Montgomery, on the brief), for defendants-appellees Stanley R. Grant, Carl M. Loeb, Rhoades & Co., Edward H. Weitzen, Jack J. Fischer, and Lybrand, Ross Bros. & Montgomery.

Boris Kostelanetz, New York City (Kostelanetz & Ritholz, New York City on the brief), for defendant-appellee Belock Instrument Corp.

Joel M. Walker, New York City (Battle, Fowler, Stokes & Kheel, New York City, on the brief), for defendant-appellee Walter V. Tyminski.

Hyman Bravin, New York City, for defendant-appellee Marvin J. Levy.

Philip A. Loomis, Jr., Gen. Counsel, David Ferber, Sol., Donald M. Feuerstein, Sp. Counsel, and Janet G. Gamer, Atty., Securities and Exchange Commission, Washington, D. C., for Securities and Exchange Commission, amicus curiae.

Before MEDINA, MOORE and HAYS, Circuit Judges.

MEDINA, Circuit Judge:

On this appeal from two judgments dismissing plaintiffs' complaints, we are presented with significant questions involving civil liability under Sections 10(b) and 18(a) of the Securities Exchange Act of 1934. Because the principal questions involved on these appeals have been under consideration by the active judges of this Court sitting *in banc* we have deferred decision until after the filing of the opinions in SEC v. Texas Gulf Sulphur Co., Docket No. 30882, 401 F.2d 833, on August 13, 1968.

There are three separate actions before us now, Heit v. Weitzen, et al., and Volk v. Weitzen, et al., originally consolidated by the District Court, and Howard v. Grant, et al., consolidated on appeal by this Court with *Heit* and *Volk*. The various complaints involve essentially the same operative facts as they all are based on the fact that Belock Instrument Corporation allegedly failed to disclose that a substantial amount of its income for the fiscal year 1964 was derived from various overcharges on government contracts. Thus, the consolidated amended complaint in *Heit* and *Volk* alleges that Heit on June 18, 1965 purchased $5,000 principal face amount of Belock's 6% convertible subordinated debentures at a price of 90% of face amount in reliance on various "materially false, misleading and untrue statements of Belock's net assets and past and prospective income," contained in Belock's Annual Report, and press releases, as well as documents filed by the individual defendants with the SEC and the American Stock Exchange. Volk allegedly purchased 100 shares of Belock common stock on April 22, 1965 and another 100 shares on April 27, 1965 in reliance on these same false statements. Heit and Volk seek to represent both themselves and the entire class of persons who purchased either common stock or debentures between April 30, 1964 and June 21, 1965, and who have either sold or continue to hold these investments at a loss. It is further alleged that the dissemination by defendants of these false statements had the

effect of artificially inflating the market price of Belock's common stock and debentures and that defendants had knowledge or notice of the falsity of the statements. In addition to Belock Corporation, the individual defendants served in *Heit* and *Volk* include Weitzen, Tyminski, Fischer, and Grant, all directors of Belock Corporation, and Levy who was a vice president of the corporation.

In the *Howard* complaint it is alleged that plaintiff Helen Howard purchased a 6% convertible subordinated Belock Corporation debenture on June 16, 1965 at an artificially inflated price. The price inflation was allegedly caused by the circulation and dissemination by the defendants "through press statements to the investment community * * * of statements as to the purported earnings and income of Belock Instrument and forecasts with respect thereto which in fact were gross overstatements." Howard seeks to represent the entire class composed of persons who purchased Belock stock or debentures in the open market and who were either misled by the published false material or by the artificially inflated market price. The defendants in *Howard* who were served include, in addition to Belock Corporation, Tyminski and Grant, Carl M. Loeb, Rhoades & Co., who is Belock's controlling shareholder, and Lybrand, Ross Bros. & Montgomery, Belock's auditors.

In *Howard,* Judge Cooper granted defendants' motion to dismiss for failure to state a claim upon which relief could be granted, primarily because the alleged fraud did not occur "in connection with the purchase or sale of any security" as required by Rule 10b–5. Howard v. Levine, 262 F.Supp. 643 (S.D.N.Y.1965). Judge Sugarman, relying in part on Judge Cooper's opinion, similarly dismissed the Section 10(b) claims in *Heit* and *Volk* for failure to satisfy the "in connection with" clause. Heit v. Weitzen, 260 F.Supp. 598 (S.D.N.Y.1966). Judge Sugarman also found that plaintiffs had failed to state a claim for relief under Section 18 of the 1934 Act since none of the reports upon which the claims were predicated were "filed" with the SEC as required by that Section. The motions to dismiss were granted without leave to replead. We also note that defendants in all the actions moved for summary judgment based on the fact that plaintiffs have suffered no damage since after the institution of these actions the price of both Belock's common stock and debentures has risen above the prices originally paid by plaintiffs. Neither of the judges below reached this question, nor do we.

## I.

Rule 10b–5, 17 C.F.R. Section 240.10 b–5, provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
>
> in connection with the purchase or sale of any security.[1]

1. The SEC in enacting Rule 10b–5 acted pursuant to the authority given it by virtue of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. Section 78j(b). That section provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—
>
> * * * * *
>
> (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contra-

Each of the judges below referred to the fact that the basic fraudulent scheme alleged in the complaints was primarily directed toward the government "notwithstanding its possible incidental market impact." Thus, it was held that the concealment of the overcharges when the financial statements were released was for "the purpose of further defrauding the Government by not disclosing the original malfeasance and not for the purpose of perpetrating a 'misrepresentation or fraudulent practice usually associated with the sale or purchase of securities.'" Heit v. Weitzen, 260 F. Supp. 598, 602 (S.D.N.Y.1966). Furthermore, as stated by Judge Cooper, since neither the corporate nor the individual defendants in the instant action were engaged in purchasing or selling Belock securities, he could see no basis for a finding that the alleged fraud occurred "in connection with the purchase or sale of any security."

However, we must now reassess the holdings below in light of the principles enunciated in SEC v. Texas Gulf Sulphur Co., Docket No. 30882, 401 F.2d 833, at 839 (2d Circuit in banc 1968). Judge Waterman writing for the Court in *Texas Gulf Sulphur* construed the "in connection with" requirement broadly and held that the clause was satisfied whenever a device was employed "of a sort that would cause reasonable investors to rely thereon, and, in connection therewith, so relying, cause them to purchase or sell a corporation's securities," SEC v. Texas Gulf Sulphur Co., at 860. There is no necessity for contemporaneous trading in securities by insiders or by the corporation itelf. "Rule 10b–5 is violated whenever assertions are made * * * in a manner reasonably calculated to influence the investing public, e. g., by means of the financial media * * *, if such assertions are false or misleading or are so incomplete as to mislead irrespective of whether the issuance of the release was motivated by corporate officials for ulterior purposes." SEC v. Texas Gulf Sulphur Co., at 861.

Applying this rule, and accepting at face value plaintiffs' well pleaded allegations, as we must on a motion to dismiss for failure to state a claim, we conclude that plaintiffs have met the requirements of the "in connection with" clause. It is reasonable to assume that investors may very well rely on the material contained in false corporate financial statements which have been disseminated in the market place, and in so relying may subsequently purchase securities of the corporation. The "ulterior motive" present in the instant case—the concealment of the fraud from the government—is irrelevant, since the false information was circulated to a large segment of the investing public. It is impossible to isolate the particular "fraudulent" acts and consider them as directed toward the government alone.

As the "in connection with" clause has been satisfied, we must now deal with the question of the standard by which the conduct of the defendants is to be judged. Judge Waterman in the *Texas Gulf Sulphur* opinion held that proof of negligence was sufficient to sustain an action for injunctive relief under Rule 10b–5(2), but at the same time found it not necessary to decide whether negligence absent a showing of bad faith would suffice in a private suit for damages. SEC v. Texas Gulf Sulphur Co., at 863. However, no question of liability for damages was before the Court in *Texas Gulf Sulphur* and Judge Friendly, in a concurring opinion joined in part by other judges, intimated that the appropriate standard in a private damage action should embody a scienter requirement. SEC v. Texas Gulf Sulphur Co., supra, at 864–869. The question is troublesome. Compare Weber v. C. M. P. Corp., 242 F.Supp. 321 (S.D. N.Y.1965) with Royal Air Properties, Inc. v. Smith, 312 F.2d 210 (9th Cir.

vention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

1962). See also III Loss, Securities Regulation at 1785.

There is no occasion for us to enter this thicket now as we pass only upon the legal sufficiency of the complaints to allege a claim for relief. This each of the complaints fairly does. The charge that defendants "knew or should have known" adequately alleges actual knowledge of the falsity of the statements, and, alternatively, negligence or lack of diligence in failing to ascertain the true facts. If some form of scienter test is to be applied, as Judge Friendly seems to suggest in his concurring opinion in *Texas Gulf Sulphur,* we think the alternative allegation of actual knowledge of falsity is amply sufficient as a matter of pleading. And this would seem to be so whether the scienter test ultimately applied be strict or liberal.[2] See Fed.R.Civ.P. 8(e) (2); Pettit v. American Stock Exchange, 217 F.Supp. 21, 28–29 (S.D.N.Y.1963); Michael v. Clark Equipment Co. et al, 380 F.2d 351, 352 (2d Cir. 1967).

Therefore, as far as the claims under Rule 10b–5 are concerned we reverse the judgments appealed from and hold that each of the complaints is sufficient to withstand a motion to dismiss for failure to state a claim for relief.

II.

Section 18(a) of the 1934 Act, 15 U.S.C. Section 78r(a) provides:

> Any person who shall make or cause to be made any statement in any application, report, or document filed pursuant to this title or any rule or regulation thereunder or any undertaking contained in a registration statement as provided in subsection (d) of section 15 of this title, which statement was at the time and in the light of the circumstances under which it was made false or misleading with respect to any material fact, shall be liable to any person (not knowing that such statement was false or misleading) who, in reliance upon such statement, shall have purchased or sold a security at a price which was affected by such statement, for damages caused by such reliance, unless the person sued shall prove that he acted in good faith and had no knowledge that such statement was false or misleading. A person seeking to enforce such liability may sue at law or in equity in any court of competent jurisdiction. In any such suit the court may, in its discretion, require an undertaking for the payment of the costs of such suit, and assess reasonable costs, including reasonable attorneys' fees, against either party litigant.

Plaintiffs in *Heit* and *Volk* have contended that they relied on various documents which were "filed" within the meaning of Section 18. The documents in question are the "10K report" for the fiscal year ended October 31, 1964[3] and

2. The consolidated amended complaint in *Heit* and *Volk*:

   Paragraph 7: The individual defendants had knowledge or notice that the reports, statements and documents referred to in paragraphs 5 and 6 above were false, misleading and contained untrue statements of material facts, as hereinbefore alleged.

   The complaint in *Howard*:

   *Paragraph 13:* Belock Instrument and the individual defendants caused or permitted such improper distribution of costs and overcharges or negligently failed to supervise the record and bookkeeping activities of Belock Instrument personnel with respect to such government contracts.

   Paragraph 14: The statements above alleged appeared on balance sheets and profit and loss statements referred to in paragraph 12 hereof which were examined or certified, or both, by defendant Lybrand, Ross, which knew or should have known that such balance sheets and profit and loss statements examined or certified by it were incorrect and false and misleading.

3. The "10K" report is a detailed document, similar to an annual report, which must be filed annually by all issuers of securities registered pursuant to Section 12 of the Securities Exchange Act of 1934 and by all registrants under the Securities Act of 1933 which are subject to Section 15(d) of the Securities Exchange Act. Rule 13a–1, 17 C.F.R. Section 240.13a–1; Rule 15d–1, 17 C.F.R. Section 240.15d–1. The SEC has

Belock's annual report for the same year, which was filed with the American Stock Exchange.

Judge Sugarman correctly ruled that the copies of the annual report submitted to the SEC were not "filed" documents within the meaning of Section 18. Rule 14a-3(c), 17 C.F.R. Section 240.14a-3 (c), of the Regulations under the Securities Exchange Act of 1934, as it read when the 1964 financial statements were issued on or about February 4, 1965 provided:

> Four copies of each annual report sent to security holders pursuant to this section shall be mailed to the Commission * * *. The annual report is not deemed to be "soliciting material" or to be "filed" with the Commission or subject to this regulation otherwise than as provided in this section, or to the liabilities of section 18 of the Act, except to the extent that the issuer specifically requests that it be treated as a part of the proxy soliciting material or incorporates it in the proxy statement by reference.

The above exemption provision, in addition to exempting the annual report filed with the SEC from the status of a "filed" document, also exempts the annual report filed with the American Stock Exchange from the coverage of Section 18. This result is required by the specific language of the second sentence of the above provision which contains several independent exemption clauses. Thus, the annual report is neither considered to be "filed with the Commission" nor subject to "the liabilities of section 18 of the Act." The latter phrase covers the alleged filing with the American Stock Exchange.

Although Fischman v. Raytheon, 188 F.2d 783 (2d Cir. 1951) held that Section 18(a) applied to "documents" filed with a national securities exchange, the effect of the above regulation is to withdraw annual reports from the category of "filed" documents. The SEC has the power to prescribe rules that "may be necessary for the execution of the functions vested in" it by the Securities Exchange Act, Section 23(a) Securities Exchange Act of 1934, 15 U.S.C. Section 78w(a), and in the performance of this duty the Commission may properly determine which filings are to be deemed "filings" for the purposes of Section 18.

Therefore, the only possible "filed" document remaining is the "10K report" which is submitted to the SEC.[4] We think it clear that the 10K report is a "filed" document within the meaning of Section 18.[5] See Fischer v. Kletz, 266 F.Supp. 180 (S.D.N.Y.1967). The exemption provision contained in the SEC regulations relating to filing of the 10K report applies only to the copies of the

issued specific instructions outlining the material which must be contained in the "10K" report. When the "10K" report is filed with the SEC additional supplemental information must also accompany the report. This supplemental information consists of any annual report for the registrant's last fiscal year and every form of proxy soliciting material sent to more than ten of the registrant's stockholders with respect to any annual or other meeting of stockholders. 17 C.F.R. Section 249.310. See also footnote 4 infra.

4. SEC Regulations Section 249.310

(b) General Instructions—(1) Rule as to use of Form 10-K. Form 10-K shall be used for annual reports pursuant to section 13 or 15(d) of the Securities Exchange Act of 1934, for which no other form is prescribed.

Section 13 of the Securities Exchange Act of 1934, 15 U.S.C. Section 78m

(a) Every issuer of a security registered pursuant to Section 12 of this title shall file with the Commission, in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate for the proper protection of investors and to insure fair dealing in the security * * *

(2) such annual reports (and such copies thereof), certified if required by the rules and regulations of the Commission by independent public accountants, and such quarterly reports (and such copies thereof), as the Commission may prescribe.

5. Defendants have conceded this point in their brief.

annual report which accompany the 10K report and not the 10K report itself. Regulation 249.310 as it read when the Belock 10K report was allegedly filed provided:

> (i) Every registrant which files an annual report on this form [10K] shall furnish to the Commission for its information four copies of the following * * *
>
> (a) any annual report to stockholders covering the registrant's last fiscal year;
>
> * * * * * *
>
> (ii) The foregoing material shall not be deemed to be "filed" with the Commission or otherwise subject to the liabilities of Section 18 of the Act, except to the extent that the registrant specifically requests that it be treated as a part of its annual report on this form [10K] or incorporates it therein by reference.

The opinion of the District Court is unclear and we are unable to determine whether Judge Sugarman intended to hold that the 10K report was not a "filed" document. Appellees contend that Judge Sugarman ignored plaintiffs' claims based on form 10K simply because on oral argument appellants conceded that they could not allege or prove actual knowledge of and reliance upon any Belock 10K report. Appellants have denied making this concession. Reliance on the actual 10K report is an essential prerequisite for a Section 18 action and constructive reliance is not sufficient.[6] Therefore, although under the liberal pleading provisions of the Federal Rules of Civil Procedure, the *Heit* and *Volk* complaints might well be considered broad enough to cover the allegation that they relied on misrepresentations contained in 10K reports,[7] we believe it advisable to remand these cases to the District Court for a reconsideration of the question of leave to amend. Judge Sugarman may have relied on plaintiffs' alleged concession or he may have thought that the complaint was not broad enough to cover an allegation of reliance on a 10K report. On the other hand, he may have incorrectly assumed that a 10K report could not form the basis for a Section 18 action. Thus the interests of justice would seem to require a clear appraisal of the pros and cons.

Finally, although the complaint in *Howard* contains no Section 18 claim for relief, it is stated in appellants' brief that such allegations will be added to the *Howard* complaint "if leave to amend is

6. This is made clear by comparing Section 18 with Section 11 of the Securities Act of 1933. Section 11 contains a provision enabling a plaintiff to establish reliance "without proof of the reading" of the particular document. See III Loss, Securities Regulation, p. 1752 (2d Ed. 1961). See also Comment, Civil Liability for Misstatements in Documents Filed Under Securities Act and Securities Exchange Act, 44 Yale L.J. 456, 460–61 (1935); Note, Accountants Liabilities for False and Misleading Financial Statements, 67 Colum.L.Rev. 1437, 1445 (1967).

7. *Heit-Volk* consolidated amended complaint.

Paragraph 5(a): On or about February 4, 1965, Belock, at the direction of the individual defendants, caused to be filed with the Securities and Exchange Commission ("SEC"), pursuant to the provisions of the Securities Exchange Act of 1934 and the General Rules and Regulations promulgated thereunder, and with the American Stock Exchange, its Annual Report for the fiscal year ended October 31, 1964.

Paragraph 6: Similar materially false, misleading and untrue statements of Belock's net assets and past and prospective income were contained in reports and other documents filed by Belock at the direction of the individual defendants with the SEC and the American Stock Exchange, as well as in press releases and reports to stockholders for the quarters ending April 30, 1964, July 31, 1964, October 31, 1964, January 31, 1965, and for the half-year ending October 31, 1964, issued by Belock at the direction of the individual defendants.

Paragraph 11(a): Plaintiffs purchased and retained Belock's securities and reliance on the truth of the statements and representations herein alleged.

granted." We leave this for the consideration of the District Court if, as and when such an application for leave to amend is addressed to that Court.

### III.

The District Court did not rule on defendants' motions for summary judgment. We believe it would be inappropriate at this early stage in the proceedings to deal with the issue of damages raised by these motions. We agree with the SEC that questions relating to damages should be postponed until after the facts have been fully developed at the trial.[8]

We wish to express our thanks to the SEC for submitting an *amicus curiae* brief at our request in this case.

Reversed and remanded for further proceedings consistent with this opinion.

MOORE, Circuit Judge (dissenting):

For the reasons set forth in my dissenting opinion in Securities and Exchange Commission v. Texas Gulf Sulphur Co. et al., 401 F.2d 833, pp. 870–889, I would hold that the "in connection with the purchase or sale of any security" requirement of Rule 10b–5 has not been met in the complaints dismissed below. Therefore, I would affirm the decisions of Judges Sugarman and Cooper. Apparently, the propriety of these suits as appropriate class actions has not been presently challenged and is not before us. In any event, even if proper, resolution of any and all issues relating thereto would be for the trial. The Heit and Volk consolidated amended complaint alleges that plaintiff Heit "brings this action on his own behalf and on behalf of all other persons who purchased Belock's debentures between April 30, 1964 and June 21, 1965, and who have either sold or continue to hold such debentures at a loss." The allegation as to Volk is identical except that it relates to common stock. Obviously, such a class, which plaintiffs claim to champion, would be wholly unrelated to any of the facts as pleaded. Belock was engaged principally in engineering and manufacturing military electronic equipment. The price range of Belock's 6% convertible debentures in 1964 was 178 high and 97½ low and in the first six months of 1965, 149 high and 75 low; for the common stock the range was 1964 high, 5⅜, low 3⅝, and for the first six months of 1965, 5⅞ high, 2⅝ low. The causes for the wide fluctuations of the thousands of listed securities would be legion even if ascertainable and cover events from the national and international to ever-changing local situations in specific companies. A class for purposes of a lawsuit could scarcely consist of all persons who bought stock on one of the national exchanges and subsequently sold it at a loss. To be sure, plaintiffs qualify this claim by alleging that "The other members of the stock class and the debenture class purchased and retained Belock's securities in reliance on the truth of the statements and representations herein alleged." Cons. Am'd Compl. ¶ 11(b). Thus, limited to "reliance," possibly a "class" is stated. As previously stated, this determination, together with damages, if any, must await a trial. The same infirmities as to "class" exist in my opinion in the Howard complaint to an even greater extent because the limitation is less specific.

---

8. SEC *Amicus Curiae* Brief at p. 32.
 [The determination of this issue] should properly await the trial of the case, which will provide a complete record as to exactly what the defendants did, why they did it and how this affected the plaintiffs. We believe the Court will then be in a better position to examine and resolve questions with respect to the appropriate remedy, giving consideration to how a damage award against the issuer would affect the issuer and all of its stockholders, including those who neither bought nor sold. In so doing the Court will be able to utilize its traditional flexibility with respect to remedies, avoiding, on the one hand, Draconian relief and, on the other hand, an opportunity for violators to profit from their wrongdoing.