**UNITED STATES of America,**
**Plaintiff,**

v.

**Jack L. CLARK et al., Defendants.**

**No. 72 Cr. 1356.**

United States District Court,
S. D. New York.

May 7, 1973.

See also, D.C., 359 F.Supp. 131.

Whitney North Seymour, Jr., U. S. Atty., Gary P. Naftalis, Asst. U. S. Atty., of counsel, New York City, for plaintiff.

Arthur F. Mathews, of counsel, Washington, D. C., Poletti, Freiden, Prashker, Feldman & Gartner, Paul R. Grand, of counsel, New York City, for defendants.

GRIESA, District Judge.

■ Defendant Clark moves to dismiss Counts 2–34 of the indictment, which charge violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and S.E.C. Rule 10b–5. Clark's basic contention is that Counts 2–34 do not charge conduct coming within the wording found in both the statute and rule, which make unlawful certain conduct committed "in connection with the purchase or sale of any security."

Counts 2–34 clearly allege misconduct in terms of Rule 10b–5—i. e., that Clark and the other defendants employed manipulative and deceptive devices and contrivances "in connection with the purchase and sale of securities, to wit, the common capital stock of Four Seasons." However, each count alleges a specific purchase of Four Seasons stock, or an order for the purchase of Four Seasons stock, and there is no allegation that Clark or the other defendants were the sellers of the stock in such transactions or that any of them directly participated in the transactions. The basic charge is that Clark and the other defendants disseminated false material and engaged in other activities designed to cause the investing public to purchase Four Seasons stock at inflated prices.

The Court of Appeals for this Circuit has interpreted the "in connection with" wording in such a way as to cover the type of conduct charged in Counts 2–34. In S.E.C. v. Texas Gulf Sulphur Company, 401 F.2d 833, 860 (2d Cir. 1968), Judge Waterman, in an opinion joined by Judges Smith and Feinberg, stated:

"Therefore it seems clear from the legislative purpose Congress expressed in the Act, and the legislative history of Section 10(b) that Congress when it used the phrase 'in connection with the purchase or sale of any security'

intended only that the device employed, whatever it might be, be of a sort that would cause reasonable investors to rely thereon, and, in connection therewith, so relying, cause them to purchase or sell a corporation's securities. There is no indication that Congress intended that the corporations or persons responsible for the issuance of a misleading statement would not violate the section unless they engaged in related securities transactions or otherwise acted with wrongful motives; indeed, the obvious purposes of the Act to protect the investing public and to secure fair dealing in the securities markets would be seriously undermined by applying such a gloss onto the legislative language."

This discussion related specifically to the request for injunctive relief against the corporate defendant. It appears from the concurring opinions of Judges Friendly, Kaufman, Anderson and Hays that they agreed with this portion of Judge Waterman's opinion. Chief Judge Lumbard and Judge Moore dissented from and disagreed with the above interpretation of the "in connection with" language of the statute and rule.

In Heit v. Weitzen, 402 F.2d 909 (2d Cir. 1968), Judge Medina, in an opinion joined by Judge Hays, applied the interpretation of the "in connection with" language, set forth in *Texas Gulf*, to private damage claims. Judge Moore again dissented.

As a result of *Texas Gulf* and *Heit*, the Court of Appeals for this Circuit has announced its interpretation of the "in connection with" language of § 10(b) and Rule 10b–5, and has applied that interpretation both in an S.E.C. injunction action and in private damage actions. In my view, there is no reasonable basis for holding that some different interpretation should apply to a criminal action.

For the above reasons, the motion of defendant Clark to dismiss Counts 2–34 of the indictment is denied.

Clark also moves to dismiss Counts 35–56, which are brought under the mail fraud statute, 18 U.S.C. § 1341. Clark claims that the mail fraud counts are defective, and should be dismissed, for two basic reasons: (1) that the mail fraud statute does not authorize criminal prosecution of a person in the absence of allegations that that person, directly or indirectly, sought to obtain money or property by means of the specific alleged mailings; and (2) the mail fraud statute was not intended to authorize criminal prosecution of a person in the absence of allegations that specific mailings were made by or for him in furtherance of the alleged fraudulent scheme.

Counts 35–55 allege misconduct in terms of the mail fraud statute—i. e., that Clark and the other defendants willfully devised a scheme to defraud purchasers of Four Seasons stock and to obtain money and property from such purchasers by means of false and fraudulent representations, and that for the purpose of executing such scheme, they placed and caused to be placed in the postal system certain mail matter. The question posed by Clark's motion arises in the fact that each of the Counts 35–55 relate to a specific piece of mail allegedly caused to be mailed by defendant Clark and the other defendants, but it appears from the indictment and the bill of particulars that these pieces of mail were either confirmation slips mailed by brokerage houses or, in one instance, a stock bulletin mailed by Merrill Lynch. The Government apparently does not contend that Clark and the other defendants personally participated in the mailing of the confirmation slips or the Merrill Lynch bulletin.

Count 56 alleges that Clark and the other defendants defrauded the State of Ohio and caused to be mailed a letter from the National Credit Office in New York City to one Harry A. Groban in Columbus, Ohio.

■ As to the first of the above contentions made by Clark, the mail fraud statute does not relate exclusively to

mailings made for the purpose of obtaining money or property. The statute is phrased in the alternative as follows:

"Whoever, having devised or intending to devise any scheme or artifice to defraud, *or* for obtaining money or property by means of false or fraudulent pretenses, representations or promises. . . ." 18 U.S.C. § 1341 (emphasis added).

In any event, the indictment covers both grounds, charging that Clark and the other defendants devised the illegal scheme to defraud *and* to obtain money and property.

■ As to the second of the above contentions of Clark, there is no requirement that the defendant personally participate in, or personally direct, the specific mailing. The Supreme Court has stated in Pereira v. United States, 347 U.S. 1, 8–9, 74 S.Ct. 358, 363, 98 L.Ed. 435 (1954):

"Where one does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended then he 'causes' the mails to be used."

■ In view of *Pereira,* it would appear that the present indictment is sufficient on its face in alleging that Clark and the other defendants caused to be mailed the confirmation slips and the other materials referred to. See III Loss, Securities Regulation 1522–1524 (2d ed. 1961).

For the above reasons, Clark's motion to dismiss Counts 35–56 is denied.

Clark also moves to dismiss Counts 57–61 brought under Section 17(a) of the 1933 Act.

As to Count 61, it is not directed against Clark. This count was apparently mistakenly included in Clark's motion.

As to Counts 57–60, the allegations are sufficient on their face to charge violation of Section 17(a). The motion to dismiss Counts 57–61 is denied.