**WHITLOW & ASSOCIATES, LTD., a Hawaii corporation, Plaintiff,**

v.

**INTERMOUNTAIN BROKERS, INC., a Utah corporation and The Colwell Company, a California corporation, Defendants.**

**Civ. No. 2282.**

United States District Court
D. Hawaii.
March 25, 1966.

---

Phillip L. Rother, Honolulu, Hawaii, Hogan, Howell & Rother, Honolulu, Hawaii, of counsel, for plaintiff.

Robertson, Castle & Anthony, Honolulu, Hawaii, J. Garner Anthony, Alexander C. Marrack, Honolulu, Hawaii, and Lloyd F. Dunn, Los Angeles, Cal., of counsel, for defendant, Colwell Co.

TAVARES, District Judge.

Plaintiff brings suit under the Securities Act of 1933 for the return of an $11,000 "good faith" deposit paid in connection with an application for a construction loan. Judgment has been entered against defendant Intermountain Brokers, Inc. ("Intermountain"), and now the plaintiff and defendant The Colwell Company "Colwell") both move for summary judgment. Defendant Colwell contends that it was not plaintiff's agent, and also argues that a promissory note is not a security within the meaning of the Securities Act of 1933.

During the negotiations involved here, plaintiff was represented by Aloha State Mortgage Company, Inc. ("Aloha").

Aloha requested that Colwell attempt to place a loan for plaintiff. Thereafter Colwell sent a letter to Aloha, dated August 9, 1963, which included the following:

"Ever since you gave me this case about two months ago, I have been casting around for a source. As you might have suspected, it is a very difficult loan to place. Most of the lenders feel that the credit is simply not strong enough to support a leasehold loan.

"However, Intermountain Brokers, Inc. advise that they have an interested lender who has reviewed the brochure presentation. They are willing to recommend for consideration a loan in the amount of $550,000 for twenty years with interest at 6½%. The point structure is necessarily high at 7% or $38,500. This fee includes 1 point or $5,500 to The Colwell Company.

"If this deal is acceptable, please have a responsible officer of the Whitlow Associates, Ltd. execute the original of the application and return it to this office together with good faith deposit in the amount of $11,000 representing 2% on the principal amount. The fees are to be construed as earned upon delivery of a formal commitment in accordance with the enclosed application."

The application referred to in the letter was on a form prepared by defendant Intermountain and provided, with reference to the $11,000 deposit, that it was to be refunded if the loan were not approved as applied for (less any necessary expenses). The application also provided:

"This application will be null and void unless approved as applied for by November 10, 1963.",

and further:

"Should the applicanat [sic] withdraw this application prior to November 10, 1963, this deposit to be retained by Intermountain Brokers, Inc., as liquidated damages."

The application was completed and sent to Colwell together with a check payable to Colwell in the sum of $11,000. The covering letter from Aloha to Colwell stated in part:

"This is your authorization to immediately proceed to obtain a bankable, firm, irrevocable commitment from the lender in accordance with your letter of August 9, 1963 and Application For Loan of Intermountain Brokers, Inc. * * *."

Colwell deposited the $11,000 to its account and forwarded the application to Intermountain together with Colwell's check in the sum of $11,000.

Later Colwell sent Aloha a letter dated September 13, 1963, which stated in part:

"This will acknowledge receipt of letters dated September 10, 1963, making inquiry as to the present disposition of your two pending loans which are being placed through Intermountain Brokers, Inc.",

and also:

"In the event that Equitable should decline the proposed loan, your good faith deposit in the amount of $11,000 will be immediately refunded."

On October 29, 1963, Colwell wrote Aloha stating:

"Special effort has been made by Intermountain Brokers to place this loan, at our insistence * * *",

and further,

" * * * it is doubtful that we will deliver the goods."

Shortly thereafter it became apparent to all of the parties involved, that Intermountain had failed to procure a lender, and that in any event it surely would not be able to do so before November 10, 1963. Accordingly, the body of Aloha's letter to Colwell, dated November 5, 1963, is now set forth in its entirety:

"Thank you for your letter of October 29 with the enclosures. I have discussed this matter with Mr. Whitlow and of course he is as disappointed as

we all are. He is requesting that you obtain the return of his deposit for him as soon as possible.

"Please advise me as to when I can expect his deposit. Thanking you again for your time and trouble.

Very truly yours,".

Upon receiving the latter communication on November 7, 1963, Colwell wrote Intermountain as follows:

"Of even date, we have received communication from Mr. Ed Klein, President of Aloha State Mortgage Company, Honolulu, requesting that we withdraw the loan application and return the $11,000 good faith deposit.

"Unless there is very strong evidence that a loan can be secured at this time, then we request that you return the good faith deposit to this office.

"It is very obvious to us that you have made an all out effort to place this loan, and we appreciate very much all the time and trouble which you have expended on our behalf. Perhaps we will still be able to place the Royal Polynesian Hotel deal and thereby mutually benefit.

"Best personal regards,".

Using the latter communication as an excuse, Intermountain declared a forfeiture of the $11,000 deposit on the theory that Colwell's letter of November 7 constituted a withdrawal of the loan application, and that since it was apparently received on or slightly before November 10, the previously quoted forfeiture provision of the loan application would apply.

On November 21, 1963, Colwell wrote to Intermountain, in part, as follows:

"If we can advise the borrowers that you have secured an acceptable loan, this would be very gratifying for all of us concerned. However, if you have not been successful in placing this loan, the borrower expects and demands the return of the entire good faith deposit amount with no exclusions therefrom for expenses incurred by you.

"We have assured the borrower that if a loan could not be placed that we would return the entire good faith amount which has always been our practice."

A few days later, Colwell sent a letter to Aloha dated November 26, 1963, which contained the following:

"We have had time to stop and reflect in retrospect [upon] the slow service which we have afforded you in connection with the captioned loan. We feel that the the point structure of 6½% to Intermountain Brokers, Inc. and their eastern brokerage connection is very expensive financing; and we therefore withdraw The Colwell Company as mortgage brokers in this transaction so that Mr. Whitlow will be spared the extra loan charges. Perhaps this will assist you in making the deal. At any rate, it is a goodwill gesture on our part. Should the loan be consumated, [sic] you may feel free to deal direct with Intermountain Brokers, Inc. rather than through The Colwell Company."

The position taken by defendant Colwell in this case, that it did not represent the plaintiff, may stem in part from a rather gross misapprehension of the law apparently entertained by Colwell and reflected in its letter, dated December 9, 1963, addressed to Aloha, which stated in part:

"Of particular note for Mr. Whitlow's counsel is the fact that on November 26, we withdrew from negotiations as a representing broker which should free The Colwell Company from any liability; * * *."

■ The evidence is overwhelming that Colwell acted as a broker representing the plaintiff throughout all significant stages of the events which gave rise to this lawsuit. It was Colwell who brought Intermountain into the picture, and Colwell was to receive part of the compensation for any loan placed for the plaintiff through Intermountain. Colwell negotiated plaintiff's $11,000 check representing the deposit, and the fact that Colwell immediately paid over the entire sum to its sub-broker, Intermoun-

tain, was a matter completely between Colwell and Intermountain. It does not appear that the plaintiff was consulted about the manner in which Colwell and Intermountain would handle the deposit, between themselves. It is also abundantly clear that Colwell repeatedly assured the plaintiff that Colwell guaranteed the return of plaintiff's deposit in the event of a failure to obtain a loan commitment. Furthermore, Intermountain's pretext for declaring a forfeiture of the deposit was provided by Colwell's improvident and inappropriate choice of words in its letter of November 7, 1963.

Accordingly it is the finding of this Court that the defendant Colwell acted as a broker for the plaintiff and therefore was a fiduciary for the plaintiff throughout the transaction in question.

■ It is axiomatic that plaintiff does not have the burden of proving common law fraud in an action based upon the Securities Act of 1933. See Royal Air Properties, Inc. v. Smith (9 Cir. 1962) 312 F.2d 210, 212: "In an action brought under section 10(b), common law fraud need not be alleged ... ultimately proved."; followed in Stevens v. Vowell (10 Cir. 1965), 343 F.2d 374, 379: "It is not necessary to allege or prove common law fraud to make out a case under the statute and rule."

There remains the question of the applicability of the Securities Act of 1933 to this transaction.

Count I of the Complaint is based upon 15 U.S.C. § 77q which provides in material part:

"(a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

"(1) to employ any device, scheme, or artifice to defraud, or

"(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in

order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

"(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser."

Count II of the Complaint is based upon 15 U.S.C. § 78j which provides that it is unlawful to use the instrumentalities of interstate commerce or the mails to employ any manipulative or deceptive device or contrivance in the sale of any security, contrary to regulations of the Securities and Exchange Commission.

■ Defendant takes the position that a promissory note is not a security within the meaning of these sections. A leading case on this question is Llanos v. United States (9 Cir. 1953) 206 F.2d 852, 853–854, certiorari denied, 346 U.S. 923, 74 S.Ct. 310, 98 L.Ed. 417, in which the Court said:

"Appellants * * * argue that promissory notes are not securities within the meaning of Section 2(1) of the Act. * * *

" * * * *

"Appellants * * * cite many cases which hold that promissory notes were not 'securities' under other statutes (citations omitted). These cases involved the interpretation of the word 'securities' as used in particular acts and did not involve the definition of 'security' given in the above statute. In defining the word 'security' in Section 2(1) of the Act, Congress intended to include all interstate transactions which were the legitimate subject of its regulation and the section should not be construed narrowly (citations omitted)."

After quoting the form of the promissory note there involved, the Court further said, at page 854:

"This instrument is clearly an 'evidence of indebtedness,' and as such falls within the statutory definition of securities. United States v. Monjar, 3 Cir., 147 F.2d 916, 920, certiorari de-

nied, 325 U.S. 859, 65 S.Ct. 1191, 89 L.Ed. 1979."

The Llanos case was followed in S. E. C. v. Vanco, Inc., (D.N.J.1958) 166 F. Supp. 422, 423 in which the Court held:

"Under Section 2 of the Act, the term 'security' includes a note, evidence of indebtedness and certificates of interest or participation in securities. A note has also been judicially determined to be a security. Llanos v. United States, 9 Cir., 206 F.2d 852; United States v. Monjar, 3 Cir., 147 F. 2d 916; S. E. C. v. C. M. Joiner Leasing Corp., 320 U.S. 344, 64 S.Ct. 120, 88 L.Ed. 88. And the issuance of a promissory note constitutes a sale under the Act. Llanos v. United States, supra; Bogy v. United States, 6 Cir., 96 F.2d 734; S. E. C. v. Crude Oil Corp., 7 Cir., 93 F.2d 844.";

and more recently Llanos was followed in S. E. C. v. Addison (N.D.Texas 1961), 194 F.Supp. 709, in which the Court said, at page 721:

"The personal loan notes issued and delivered to the lenders are securities. The definition of the terms 'security' includes 'any note.' Llanos v. United States, 9 Cir., 1953, 206 F.2d 852, certiorari denied 346 U.S. 923, 74 S. Ct. 310, 98 L.Ed. 417; Securities and Exchange Commission v. Vanco, D.C. N.J.1958, 166 F.Supp. 422, 423.

"The personal loan notes issued and delivered to the lenders are also securities by reason of being evidences of indebtedness. The definition of the term 'security' includes 'any * * evidence of indebtedness.' Llanos v. United States, supra [206 F.2d 853]; United States v. Monjar, D.C.Del.1942, 47 F.Supp. 421, affirmed 3 Cir., 147 F.2d 916, certiorari denied 325 U.S. 859, 65 S.Ct. 1191, 89 L.Ed. 1979; Securities and Exchange Commission v. Bailey, D.C.Fla.1941, 41 F.Supp. 647."

See also S. E. C. v. Bailey (S.D.Fla. 1941), 41 F.Supp. 647, 650; and Schamber v. Aaberg (D.Colo.1960), 186 F.Supp. 52, 56.

Therefore, this question has been decided adversely to defendant Colwell's contention.

 The entire course of dealing, which utilized instrumentalities of interstate commerce and the mails, involved proposals and counter-proposals for the issuance of a promissory note by the plaintiff and its sale at a discount through the defendants.

Defendant Colwell induced plaintiff to pay $11,000 to Colwell by representing that Colwell would refund that amount if a loan commitment was not obtained; the Court finds that this representation was material. It is undisputed that no loan commitment was obtained, and that Colwell has not refunded the $11,000.

It is the opinion of the Court that this course of business operated as a deceit upon plaintiff, and constituted a deceptive device or contrivance " * * * in connection with the purchase or sale of [a] security * * *." in contravention of the Securities Act of 1933.

Therefore judgment is hereby granted for the plaintiff against defendant The Colwell Company.