336 F.Supp. 307 (1971)
Marjorie JOSEPH et al., Plaintiffs,
v.
NORMAN'S HEALTH CLUB, INC., et al., Defendants.
Barbara C. MORSE et al., Plaintiffs,
v.
NORMAN'S HEALTH CLUB, INC., et al., Defendants.
John M. YOST, Plaintiff,
v.
NORMAN'S HEALTH CLUB, INC., et al., Defendants.
Vincent GRECO, Plaintiff,
v.
NORMAN'S HEALTH CLUB, INC., et al., Defendants.
Nos. 70 C 416(4), 70 C 633(4), 71 C 3(4), 71 C 253(4).
United States District Court, E. D. Missouri, E. D.
December 6, 1971.
*308 *309 *310 Green & Lander, Martin M. Green, Clayton, Mo., for plaintiffs.
James A. Pudlowski, St. Louis, Mo., for defendants Saindon Sailor & Health Clubs.
Thomas, Busse, Cullen, Clooney, Weil & King, St. Louis, Mo., for defendants Consolidated Finance, F. W. Gross; D. Rondeberg & D. C. Berra.
Rosecan & Popkin, St. Louis, Mo., co-counsel for defendant Consolidated Finance and others.
Shramm & Morgenstern, Sanford J. Miller and Donald R. Wilson, Clayton, Mo., for Sanfilippo.
Susman, Willer, Rimmel & Elert, St. Louis, Mo., for defendants Boston Securities, Inc., Alvin D. and Lester Perlmutter.

MEMORANDUM
WANGELIN, District Judge.
Plaintiffs in these four related and consolidated cases have filed class actions under the Securities Exchange Act of 1934, and the rules promulgated thereunder, and under the Consumer Protection Act. The cases are presently before the Court on Motions of certain of the defendants to dismiss the amended complaints and motions by other defendants for summary judgment. In addition, certain of the defendants have, by motion, challenged the class action aspect of these cases while the plaintiffs have filed a motion to determine that the class action can be maintained. Plaintiffs also filed a motion to compel certain of the defendants to answer interrogatories. All motions have been briefed and argued.
In each of the four cases, the plaintiffs are individuals who purchased "lifetime" memberships in health clubs, each of which was known as and did business as "Norm Sandon's Health Club". In all of the four cases, eleven of the corporate defendants are the same: Norman's Health Club, Inc.; Lindell Fitness, Inc.; Downtown St. Louis Fitness, Inc.; Crestwood Fitness, Inc.; Family Fitness, Inc.; Midtown St. Louis Fitness, Inc.; Greater St. Louis Fitness, Inc.; Clayton Fitness, Inc.; St. Louis Fitness, Inc.; Village Fitness, Inc.; Norm Sandon Enterprises, Inc., (hereinafter referred to collectively as the "Health Clubs"). In all of the four cases, four of the individual defendants are the same: Norman R. Sandon, a director and president of the Health Clubs; Barbara Sandon, a director and/or officer of the Health Clubs; James C. Sailor, an officer of several of the Health Clubs; Frank Davis, a/k/a Frank Sanfilippo, the credit manager for the Health Clubs. The Health Clubs and the individual defendants above-named will sometimes be referred to as the "Sandon defendants".
Each of the four cases names separate defendants, finance companies and their officers and directors, (referred to collectively as the "finance company defendants") as follows: No. 70 C 416 names Consolidated Finance Corporation; Frank W. Gross, Daniel Rondberg and Donald C. Berra, officers and directors *311 of Consolidated Finance Corporation (hereinafter referred to collectively as the "Consolidated defendants"). No. 70 C 633 names Boston Securities, Inc., Boston Securities Inc. of Florissant, Boston Securities Inc. of Kirkwood, Boston Securities Inc. of Moline Acres, and Alvin D. Perlmutter, and Lester Perlmutter, officers and directors of the Boston Securities defendants (hereinafter referred to collectively as the "Boston defendants"). No. 71 C 3 names Mercury Acceptance Corporation, Donald W. Ruzicka, Sr. and Mary Lou Ruzicka, officers and directors of Mercury (hereinafter referred to collectively as the "Mercury defendants"). No. 71 C 253 names Sentinel Securities, Inc. and E. L. Myers, G. L. Freitag and Arthur F. D. Evans, Jr., officers and directors of Sentinel (hereinafter referred to collectively as the "Sentinel defendants").
In two of the four cases the motions are directed to Second Amended Complaints, in one of the four to the First Amended Complaint, and in the last, to the Complaint. However, all the complaints are essentially identical with respect to substantive allegations differing only as to dates and parties and will be referred to as "complaints".
The Boston defendants and the Consolidated defendants filed motions to dismiss the complaints for failure to state a claim upon which relief can be granted and the Boston defendants seek dismissal for failure to join an indispensable party. The Mercury defendants and the Sentinel defendants raise the issue of failure to state a claim upon which relief can be granted by their answers, and the defenses will be treated as motions to dismiss on the same basis. The Sandon defendants filed a motion for summary judgment supported by affidavits. With respect to the motions to dismiss, the Court must take all well pleaded allegations in the complaints as true, and will not dismiss the complaints unless it appears beyond a doubt that the plaintiffs cannot prove any facts in support of their claims which would entitle them to relief. Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Great A. & P. Tea Co. v. Amalgamated Meat Cutters, 410 F.2d 650 (8th Cir. 1969).
In connection with the motions for summary judgment, the applicable rule is set forth in Traylor v. Black, Sivalls & Bryson, Inc., 189 F.2d 213, 216 (8th Cir. 1951):
"A summary judgment is to be entered in a case if, but only if, the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Rule 56(c), Federal Rules of Civil Procedure. A summary judgment upon motion therefor by a defendant in an action should never be entered except where the defendant is entitled to its allowance beyond all doubt. To warrant its entry the facts conceded by the plaintiff, or demonstrated beyond reasonable question to exist, should show the right of the defendant to a judgment with such clarity as to leave no room for controversy, and they should show affirmatively that the plaintiff would not be entitled to recover under any discernible circumstances. . . . And all reasonable doubts touching the existence of a genuine issue as to a material fact must be resolved against the party moving for summary judgment."
Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962); Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967 (1944); City National Bank of Fort Smith, Arkansas v. Vanderboom, 422 F.2d 221 (8th Cir. 1970); Larsen v. General Motors Corp., 391 F.2d 495 (8th Cir. 1968).
Count I of the complaint seeks damages under Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa ("1934 Act") for defendants' alleged violations of Section 10(b) of the 1934 Act, 15 U.S.C. § 78j and Rule 10b-5 (17 CFR 240.10b-5) promulgated thereunder.
*312 The basic factual situation giving rise to plaintiffs' claims is as follows: Each plaintiff purchased a "lifetime" membership in a defendant Health Club. To pay for the membership, each plaintiff executed a promissory note for $360.00 to "NORM SANDON'S HEALTH CLUB" payable in twenty-four monthly installments of $15.00 each. Thereafter the promissory notes were endorsed over to one of the defendant finance companies who paid the Health Clubs $240.00 (for purposes of this discussion the amount of $240.00 will be used although the record reveals an issue of fact exists as to the exact amount received by the Health Clubs on each note). The finance company, before accepting the note, investigated the credit standing of the lifetime member. If the finance company accepted the note, it mailed to the plaintiff a payment book requiring 24 monthly payments of $15.00 each. Copies of the two forms of promissory notes are before the Court as Court's Exhibits 1 and 2.
Plaintiffs allege that the defendants are co-conspirators who made material misrepresentations and omissions to plaintiffs to induce plaintiffs to sell the promissory notes to defendants, as follows: defendants failed to disclose 1) the cash price of the services sold; 2) that part of the promissory notes which constituted a finance charge; 3) the total amount to be financed; 4) the amount of the finance charges; 5) the finance charge expressed as a percentage; 6) the default or delinquency charge; 7) defendants falsely stated that there were no finance charges; and 8) defendants failed to disclose the failing financial condition of the Health Clubs.
Plaintiffs further allege that the finance companies extended credit directly to the plaintiffs, in the amount of $240.00, but that in furtherance of the scheme, paid the proceeds of the loans directly to the Health Clubs; and that the balance of the note ($120.00) constituted a finance charge.
Plaintiffs further allege that the defendants used the means and instrumentalities of interstate commerce in furtherance of the scheme; that the individual defendants controlled their respective corporations within the meaning of § 20(a) of the 1934 Act, 15 U.S.C. § 78t and did not act in good faith.
Plaintiffs seek rescission of the notes and damages of not less than $120.00 each, an accounting, costs and attorneys fees.
Count II of the Complaint is instituted under the Consumer Protection Act, Truth-In-Lending Act, 15 U.S.C. § 1640 (e). Plaintiffs allege that defendants violated said law in failing to disclose the information required by § 1638(a) and (b), which is essentially the information set out in the above discussion of Count I concerning the defendants' alleged material misrepresentations and omissions. Plaintiffs seek damages equal to twice the amount of the finance charge but not less than $100.00 for each plaintiff, costs and attorneys fees.
The Court takes judicial notice of the bankruptcy proceeding now pending in this court, in re: Norman's Health Club. Inc. No. 71 B 345(4).
The point raised by the Boston defendants in their motion to dismiss that plaintiffs failed to join an indispensable party, the Trustee in Bankruptcy of the Estate of Norman's Health Club, Inc. is not well taken. In these actions the Bankrupt has made no claim which could result in assets to the estate. Should plaintiffs recover a judgment against the Bankrupt, said judgment would have to be proved in bankruptcy. The Trustee in Bankruptcy has not moved to intervene. Although the preferable procedure is for the plaintiffs to seek leave to proceed against the Bankrupt from the bankruptcy court, the absence of that leave is not grounds for dismissal of the present actions. 11 U.S.C. § 29.
The initial question raised by the various defendants' motions is whether or not plaintiffs have the requisite standing to sue under Rule 10b-5: Plaintiffs must be "purchasers" or "sellers" of *313 "securities". Erling v. Powell, 4CCH Securities Law Reporter, ¶ 92,734 (8th Cir. 7/29/70); Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2nd Cir.), cert. denied 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952); City National Bank of Fort Smith, Arkansas v. Vanderboom, 422 F.2d 221 (8th Cir.) cert. denied 399 U.S. 905, 90 S.Ct. 2196, 26 L.Ed.2d 560 (1970); Greater Iowa Corporation v. McLendon, 378 F.2d 783 (8th Cir. 1967); see generally 6 L. Loss, Securities Regulation 3871 (1969).
The threshold inquiry in that connection is whether or not the promissory notes executed by the plaintiffs are "securities" within the meaning of the 1934 Act.
Section 3(a) (10) of the 1934 Act, 15 U.S.C. § 78c(a) (10) states ". . . unless the context otherwise requires ___ . . . The term "security" means any note . . . which has a maturity at the time of issuance of not exceeding nine months . . .". From the plain language of the statute a promissory note is a "security" unless the context otherwise requires, and in general, the definition of security has been literally read by courts, the result being that almost all notes are held to be securities. Rekant v. Desser, 425 F.2d 872 (5th Cir. 1970); Llanos v. United States, 206 F.2d 852, (9th Cir. 1953) cert. denied 346 U.S. 923, 74 S.Ct. 310, 98 L.Ed. 417 (1954); Olympic Capitol Corporation v. Newman, 276 F.Supp. 646 (D.C.Cal.1967); Whitlow & Associates, Ltd. v. Intermountain Brokers, Inc., 252 F.Supp. 943 (D.C. Hawaii 1966). See, Lehigh Valley Trust Co. v. Central National Bank of Jacksonville, 409 F.2d 989 (5th Cir. 1969).
The term "security" "embodies a flexible rather than a static principle, one that is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits." Tcherepnin v. Knight, 389 U.S. 332, 338, 88 S.Ct. 548, 554, 19 L.Ed.2d 564 (1967) citing S.E.C. v. W. J. Howey Co., 328 U.S. 293, 299, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946). "Consequently, a security as it is defined in § 10(b) includes `any note', `unless the context otherwise requires'". Rekant v. Desser, supra, 425 F.2d at p. 878.
Plaintiffs do not allege that they purchased a security. The plaintiffs allege that they gave their duly executed promissory notes, and received therefor, lifetime memberships in health clubs from the defendants. The allegations in the instant case are closely analogous to the facts in City National Bank of Fort Smith, Arkansas v. Vanderboom, 290 F. Supp. 592 (W.D.Ark.1968) aff'd 422 F.2d 221 (8th Cir. 1970), cert. denied 399 U.S. 905, 90 S.Ct. 2196, 26 L.Ed.2d 560. In Vanderboom, the defendants asserted a counterclaim under Section 10(b) and Rule 10b-5 when they were sued by the Bank on note. The money loaned by the Bank to the defendants was invested in a corporate venture. It appeared that certain officers of the Bank had given some advice with respect to the investment. The District Court gave judgment for the Bank on the counterclaim, stating at p. 608:
"The short answer to defendants' contention is that the plaintiff bank did not sell or offer to sell any security of any kind to the defendants. The defendants approached the bank and expressed a desire to borrow money which they, of their own volition, intended to use in the purchase of capital stock of a corporation . . . organized by themselves. When the proceeds of the notes were delivered to the defendants, the money belonged to them and they could use it in any manner."
This Court is of the opinion that the context of the present case, like the context of the Vanderboom case, requires that the promissory note is other than a security within the meaning of § 10b.
Plaintiffs allege that they sold the promissory notes to the Health Clubs who thereafter sold the notes to the finance companies. However, the allegation of "sale" does not confer standing *314 if the context reveals that the "sale" of the notes was not the sale of a security.
In addition to the lack of standing, the Court finds that the claims asserted in Count I do not fall within the statutory coverage of § 10b. As the Eighth Circuit Court of Appeals stated in City National Bank of Fort Smith, Arkansas v. Vanderboom, supra, 422 F. 2d, pp. 229-231:
"It is apparent that the extent of the coverage and liability imposed under Section 10(b) of the Securities Exchange Act and Rule 10b-5 has not as yet been precisely defined. As noted by the Supreme Court in SEC v. National Securities, Inc., 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969), the statutory section and the rule constitute one of several broad antifraud provisions set forth in the securities law in which application of the "allegedly proscribed conduct must have been `in connection with the purchase or sale of any security.' The relevant definitional sections of the 1934 Act are for the most part unhelpful * *. Consequently, we must ask whether respondents' alleged conduct is the type of fraudulent behavior which was meant to be forbidden by the statute and the rule." Id. at 466-467, 89 S.Ct. at 572.
"The Second Circuit recently considered the question of statutory coverage under Rule 10b-5 and fashioned a two-step test applicable to both private damage actions and suits for injunctive relief. In Heit v. Weitzen, 402 F. 2d 909 (2d Cir. 1968), cert. denied 395 U.S. 903, 89 S.Ct. 1740, 23 L.Ed.2d 217 (1969), a private damage action under 10b-5, the Court made clear that the first step of this statutory coverage test is governed by principles enunciated in SEC v. Texas Gulf Sulphur Co., 401 F.2d 833 (2d Cir. 1968) (en banc), cert. denied [Coates v. S.E.C.], 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969), which "construed the `in connection with' requirement broadly and held that the clause was satisfied whenever a device was employed `of a sort that would cause reasonable investors to rely thereon, and, in connection therewith, so relying, cause them to purchase or sell a corporation's securities,' SEC v. Texas Gulf Sulphur Co., at 860." 402 F.2d at 913. If the plaintiff has met the requirements of this "in connection with" test, Heit states that the second step of the statutory coverage tests is "the question of the standard by which the conduct of the defendants is to be judged." Id. Although the Second Circuit held that proof of negligence was sufficient to sustain an action for injunctive relief under Rule 10b-5(2) in Texas Gulf Sulphur, Heit, did not reach the question of whether negligence would likewise suffice in a private suit for damages.
"Since we held in Myzel v. Fields, 386 F.2d 718, 734-735 (8th Cir. 1967), cert. denied, 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed.2d 1143 (1968) that "[p]roof of `scienter', i. e., knowledge of the falseness of the impression produced by the statements or omissions made, is not required under Section 10(b)," we disagree with the second step of the Second Circuit's test to the extent that it does not reflect recognition of a negligence standard but otherwise we are in accord with the standard formulated.
"We think this two-step test breaks down as follows: (1) With regard to misrepresentations, the question is whether a reasonable investor, in light of the facts existing at the time of the misrepresentation and in the exercise of due care, would have been entitled to rely upon the misrepresentation. With regard to nondisclosures, the issue becomes whether a reasonable investor, in light of the facts existing at the time of the nondisclosure and in the exercise of due care, would have been entitled to receive full disclosure from the party charged and would have acted differently had the alleged nondisclosure not occurred. (2) If the *315 plaintiff satisfies this "in connection with" step, it then becomes necessary to determine whether the defendant's misrepresentation or nondisclosure was made with scienter or from a lack of due diligence. See Texas Gulf Sulphur Co., 401 F.2d at 863.
"It should be noted from the outset that this "reasonable investor" test is an objective standard. Whether an investor did in fact rely upon a misrepresentation is immaterial for the purpose of determining statutory coverage, though reliance is a predicate for recovery once coverage is established. . . . (notes to text omitted)"
The Sandon defendants state the issue of statutory coverage as follows:
"In the instant case, the Plaintiffs base their case on nondisclosure, and the issue thus becomes, since the full contract price of Three Hundred Sixty Dollars ($360.00) was disclosed to the Plaintiffs by the terms of the complaint, whether a reasonable `investor' or signer of the note, would have been entitled to disclosure of the fact that the health club would discount the contract to a finance company for a lesser sum, the amount of which depends on the credit standing of the signer, as a means of providing it with liquidity. To answer the question affirmatively would not only be unprecedented, but would be contrary to common sense and to widely accepted business practice."
Notwithstanding plaintiffs contention that they "sold" the promissory notes to the Sandon defendants who thereafter sold the notes to the finance company defendants, the plaintiffs claim that the finance company extended credit in the amount of $240.00 directly to each plaintiff, payable to the Health Club, and that the difference between the amount paid by the finance companies to the Health Clubs and the face amount of the note is a finance charge of $120.00.
Plaintiffs argue that because the finance company defendants checked the credit references of each plaintiff and had the final choice of accepting or rejecting a particular note, the finance company defendants were extending credit directly to the plaintiffs. If the finance company defendants extended credit directly to plaintiffs, then, plaintiffs argue, the cash price of the lifetime membership was the amount paid by the finance company defendants to the Health Clubs ($240.00). The logical conclusion, plaintiffs contend, is that the balance of the note ($120.00) constituted a finance chargeand defendants' failure to disclose such was unlawful under the 1934 Act.
Neither plaintiffs nor defendants have cited any case supporting their respective positions, and independent research discloses no case directly in point.
Assuming arguendo the validity of plaintiffs' rationale, the undisclosed finance charge does not bring the transactions within the coverage of the 1934 Act. The full contract price of $360.00 was disclosed to the plaintiffs. The matter of the alleged non-disclosure of the finance charge and its relationship to the cost of the credit extended is the subject matter of Count II.
It is the opinion of the Court that a reasonable investor (distinguished from a consumer debtor), in the exercise of due care, was not entitled to receive disclosure from the defendants that the note executed by him to the Health Club would thereafter be sold to a finance company.
It is the opinion of the Court that the alleged nondisclosure by defendants to plaintiffs fails to meet the "in connection with" test enunciated by the Court of Appeals for the Eighth Circuit in City National Bank of Fort Smith, Arkansas v. Vanderboom, supra at p. 230.
Accordingly, the Court concludes that the misrepresentations and nondisclosures, as alleged by plaintiffs in Count I of the complaints, do not fall within the statutory coverage of Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder.
Upon the pleadings, answers to interrogatories, and affidavits, the Court *316 finds that no genuine issue exists as to any fact material to Count I of the complaints, and that the Sandon defendants are entitled to summary judgment as a matter of law. The motion of the Sandon defendants for summary judgment will be granted.
The well-pleaded allegations of Count I of the complaint with respect to the finance company defendants show that plaintiffs have not stated claims upon which relief can be granted. In making this determination the Court has considered the substance of the allegations as opposed to the plaintiffs' legal characterizations of said allegations. The Court finds that, as a matter of law, the facts alleged by plaintiffs in Count I of the complaints do not state a claim for relief against the finance company defendants under Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder. The motions, and defenses treated as motions, of the finance company defendants to dismiss for failure to state a claim upon which relief can be granted will be granted.
Heretofore, the Court has not commented upon plaintiffs' allegations that all defendants were co-conspirators and that the individual defendants acted in bad faith. Those allegations, although well-pleaded, do not confer jurisdiction upon this Court if standing and statutory coverage are absent under Section 10(b) of the 1934 Act and Rule 10b-5. Such allegations, if proven in a court of competent jurisdiction, may affect the status of the finance companies as holders-in-due-course [See, Section 400.3-302 RSMo 1969; Comment, Consumer Finance Companies as holders in Due Course Under the Code, 54 Van.L.R. 279 (1968); Note, Judicial and Legislative Protection of the Consumer Notemaker, 1970 Wash. U.L.Q. 441.], but are insufficient to state a claim for relief in the instant actions.
The thrust of Count II of the complaints is that by selling the notes to the finance companies the Health Clubs have imposed a "finance charge", and that the defendants failed to disclose the information about the finance charge required by the Truth-in-Lending Act, 15 U.S.C. § 1601 et seq., thereby violating said law as to those plaintiffs purchasing memberships since July 1, 1969.
Section 1631(a), Title 15 U.S.C. provides:
"Each creditor shall disclose clearly and conspicuously, in accordance with the regulations of the Board, to each person to whom consumer credit is extended and upon whom a finance charge is or may be imposed, the information required under this part."
Section 1605(a), Title 15 U.S.C., defines a finance charge as follows:
"Except as otherwise provided in this section, the amount of the finance charge in connection with any consumer credit transaction shall be determined as the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit, including any of the following types of charges which are applicable:
(1) Interest, time price differential, and any amount payable under a point, discount, or other system of additional charges.
(2) Service or carrying charge.
(3) Loan fee, finder's fee, or similar charge.
(4) Fee for an investigation or credit report.
(5) Premium or other charge for any guarantee or insurance protecting the creditor against the obligor's default or other credit loss."
Section 1638(a), Title 15 U.S.C. sets out specifically the items which must be disclosed including the cash price; the cash down payment; the balance owing; all charges included in the amount of credit extended but which are not part of the finance charge; the total amount to be financed plus the charges as above mentioned; the amount of the finance charge; the finance charge expressed as *317 an annual percentage rate; the number, amount and due dates of payments; the default, delinquency or similar charges for late payment; description of any security interest held or retained or acquired by the creditor and a clear identification of the property to which it relates.
Subsection (b) of 1638 states the time at which the required disclosures must be made:
"Except as otherwise provided in this part, the disclosures required under subsection (a) of this section shall be made before the credit is extended, and may be made by disclosing the information in the contract or other evidence of indebtedness to be signed by the purchaser."
Pursuant to 15 U.S.C. § 1604 the Federal Reserve Board promulgated Regulation Z, which defines the coverage and liability of the Act to include persons who extend "consumer Credit." 12 C.F.R. § 226.2(m). Consumer credit is defined to mean credit extended to a natural person and for which either a finance charge is or may be imposed, or which, pursuant to an agreement, is or may be payable in more than four installments. 12 C.F.R. § 226.2(k).
The terms of Regulation Z exclude any extension of credit between the corporate finance companies and the corporate Health Clubs. The credit of concern here is the credit extended to the plaintiffs. The extension of credit, as alleged by plaintiffs, is credit extended by the finance companies to the plaintiffs directly, through the conduit of the Health Clubs. There is no dispute that the notes were payable in more than four installments.
The Sandon defendants contend that there was not imposed a "finance charge" as defined in 15 U.S.C. § 1605 for the reason that all parties agree that the notes were for $360.00, and that whether a lifetime membership purchaser paid a lump sum for the membership, or whether he executed a promissory note for $360.00 payable in 24 monthly installments of $15.00, the price was the exact same, to wit: $360.00. The identical contention was presented in Strompolos v. Premium Readers Service, 326 F.Supp. 1100, 1103 (N.D.Ill.1971) wherein the court stated:
"Although the defendant contends that it charges the same unitary price for both credit and cash sales, it is readily apparent that a seller in any industry which sells primarily or almost exclusively on a long term credit basis could easily set a theoretical unitary cash and credit price which he knows no one will pay in less than four installments and thus exempt himself and his industry from the coverage of the Act. Merely because a so-called `cash' price is the same as for a thirty installment repayment plan does not indicate that the "cash price does not include substantial financing charges in a very real sense.
* * * * * *
"Neither the law, the Federal Reserve Board nor the courts are so simplistic as to believe that a person in the business of extending long term credit should be permitted in effect to abolish the Truth in Lending Act by merely charging a single `cash or credit' price knowing full well that the great bulk of its customers will never pay in less than, for example, thirty months."
This Court agrees with the above analysis of Regulation Z and concludes that the fact that the cash or credit price of the Health Club memberships was the same, is not conclusive on the issue of whether or not a finance charge was imposed.
Without determining whether the consumer credit involved here is a "credit sale" or a "consumer loan" [See, Stefanski v. Mainway Budget Plan, Inc., 326 F. Supp. 138 (S.D.Fla.1971)], the Court observes that the promissory notes executed by plaintiffs are deficient with respect to the disclosures required by the Act and Regulation Z, if in fact, a finance charge was imposed.
*318 The notes executed by plaintiffs disclose, among other things, that the annual finance charge is "$0" and the annual rate is "0%". However, since plaintiffs have alleged that a finance charge was in fact included in the face amount of the notes, and defendants contend that no finance charge was imposed, a material fact is in dispute and summary judgment is inappropriate.
Nor is dismissal appropriate on the motions of the finance company defendants. Plaintiffs have alleged that the defendants failed to make the required disclosures as a subterfuge to evade the requirements of the Truth in Lending Act, and in connection therewith, used the Health Clubs as a conduit through which the promissory notes passed to the finance companies who were the actual extenders of credit.
The Court finds that Count II of the complaints state a claim upon which relief can be granted against the finance company defendants. See also, 15 U.S.C. § 1640(d).
Section 1640(a) provides that "any creditor who fails in connection with any consumer credit transaction to disclose to any person any information required under this part to be disclosed to that person is liable to that person. . . ." (emphasis supplied). "Creditor" is defined by Regulation Z as a person who in the ordinary course of business regularly extends or arranges for the extension of consumer credit, or offers to extend or arrange for the extension of such credit. See 15 U.S.C. § 1602(f).
The face of the notes show that the credit was extended to plaintiffs by Norm Sandon's Health Club, Inc. Plaintiffs allege that credit was extended directly by the defendant finance companies. The complaints do not allege specifically, or by fair inference, that the individual defendants extended credit to the plaintiffs, or arranged for the extension of credit, personally as opposed to acting on behalf of the corporations.
Accordingly, plaintiffs have failed to state a claim upon which relief can be granted against any of the individual defendants. Plaintiffs will be given 15 days within which to amend, and failing such amendment, the complaints will be dismissed as to the individual defendants.
The plaintiffs seek an order that the class action can be maintained. Count II of the complaints defines the class as:
"all persons who, since July 1, 1969, have purchased `lifetime' memberships in the Norm Sandon's Health Clubs and who, to pay for such memberships, borrowed approximately $240.00 from (one of the defendant finance companies), and who in return for such loans were required by defendants to execute promissory notes for $360.00 to "NORM SANDON's HEALTH CLUB."
Rule 23(a), F.R.Civ.P. establishes four prerequisites for the maintenance of all class actions, all of which are satisfied by the class as alleged in Count II, including allegations in Count I incorporated in Count II by reference.
The class is so numerous that joinder of all members is impracticable. Rule 23 (a) (1). Plaintiffs have alleged that they represent over 4000 persons with respect to the Consolidated defendants; over 2500 with respect to the Boston defendants; over 500 with respect to the Sentinel defendants and over 1500 as to the Mercury defendants. The Court finds joinder of all such members impracticable.
There are questions of fact or law common to the class. Rule 23(a) (2). As the discussion above concerning Count II indicates, common questions of both fact and law exist and will not be detailed here.
The claims of the representative parties are typical of the claims or defenses of the class [Rule 23(a) (3)] in that all members of the class, under the allegations of the complaints, have suffered the same injury as a result of the alleged violations by defendants. The minor variations which may exist among *319 the members of the class do not outweigh the common issues of law and fact.
The representative parties will fairly and adequately protect the interests of the class. Rule 23(a) (4). On the face of the complaints there is no disabling antagonism or conflict of interest between the representative parties and the remaining class members. There is no indication that the representative parties or their counsel are incompetent.
Each of the four classes satisfies the requirement of Rule 23(b) (3) that the questions of law and fact common to the class predominate over any questions affecting only individual members, and a class action is a superior method for the fair and efficient adjudication of the controversy.
In making the above determinations, the Court has carefully considered all matters raised by the parties in their motions addressed to the class action aspect of these cases, their briefs in support, and the well-pleaded allegations of the complaints concerning the class action. In addition the Court has considered the matters set out in Rule 23(b) (3) (A), (B), (C) and (D) as they apply to the present cases, and has placed reliance upon the discussions in Eisen v. Carlisle & Jacquelin, 391 F.2d 555 (2nd Cir. 1968), cert. denied 386 U.S. 1035, 87 S.Ct. 1487, 18 L.Ed.2d 598; Green v. Wolf Corp., 406 F.2d 291 (2nd Cir. 1968), cert. denied Troster, Singer & Co. v. Green, 395 U.S. 977, 89 S.Ct. 2131, 23 L. Ed.2d 766 (1969); Esplin v. Hirschi, 402 F.2d 94 (10th Cir. 1968), cert. denied 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459; Ratner v. Chemical Bank New York Trust Co., 4 CCH Consumer Credit Guide, ¶ 99,776 (6/17/71).
Based upon all of the foregoing, the Court determines that these actions, under Count II of the complaints, may be maintained as class actions, and the appropriate order will be entered. Under Rule 23(c) (1), such an order may be conditional, and may be altered or amended before the decision on the merits.
Pursuant to Rule 23(c) (2), in any class action maintained under subdivision (b) (3), notice to the class in accordance with subdivision (c) (2) is required. The form and substance of the notice to members of the class to be given under the requirements of Rule 23(c) (2), will be determined after a pre-trial conference to be ordered herein.
Plaintiffs, pursuant to Rules 33 and 37(a), F.R.C.P., move for an order compelling the Consolidated defendants to answer Interrogatories Nos. 5, 5(a) and 5(b). Said interrogatories seek information as to whether Consolidated has ever been the assignee of any promissory notes from the Health Clubs, and if so, the interrogatories seek certain information about the notes. The Consolidated defendants objected for the reason that the interrogatories call for a legal conclusion and not for facts.
The final sentence of Rule 33(b), added by amendment in 1970, provides that "an interrogatory otherwise proper is not necessarily objectionable merely because an answer to the interrogatory involves an opinion or contention that relates to fact or the application of law to fact. . . ." It does not authorize interrogatories calling for legal conclusions as such. See, Advisory Committee Note to 1970 amendment of Rule 33(b), 48 F.R.D. at 524; and see generally Wright & Miller, Federal Practice and Procedure: Civil § 2167.
Under the amendment to Rule 33(b), as explained by the Advisory Committee Note, the only kind of interrogatory that is objectionable without more as a legal conclusion is one that extends to "legal issues unrelated to the facts of the case." In this case, the legal conclusion called for requires the application of law to facts of the case, and would therefore appear to be proper under the amended rule.
Plaintiffs motion to compel answers to interrogatories will be granted, but limited in time from July 1, 1969, in accordance with the allegations of Count II.