**MacANDREWS & FORBES COMPANY,**
a New Jersey Corporation, Plaintiff,

v.

**AMERICAN BARMAG CORPORATION,**
a North Carolina Corporation, and Barmag Barmer Maschinenfabrik Aktiengesellschaft, an alien Corporation, Federal Republic of Germany, Defendants.

Civ. A. No. 71–1218.

United States District Court,
D. South Carolina,
Columbia Division.

March 28, 1972.

**1402**

Harold W. Jacobs, and Wilburn Brewer, Jr., Columbia, S. C., for plaintiff.

Claude M. Scarborough, Jr., of Nelson, Mullins, Grier & Scarborough, Columbia, S. C., and Jack Knight, of Fleming, Robinson & Bradshaw, Charlotte, N. C., for defendants.

## ORDER

HEMPHILL, District Judge.

Defendants move to strike that portion of plaintiff's complaint catalogued as Count Three on the grounds that the allegations thereof are immaterial and do not state sufficient facts to constitute a claim upon which relief can be granted against these defendants.

The background of the case is of import. Plaintiff owns and operates, in McBee, South Carolina a textile plant wherein raw yarn of various types is texturized to make it suitable for knitting into fabric for various uses such as ladies and men's hosiery and men and women's double knit garments. Basically, the texturizing process consists of twisting the yarn and setting the twist with heat.[1] The machines which textur-

---

1. A common term for the yarn, after texturing, is "false-twist".

ize the yarn receive thread at separate positions from a large number of spools and each thread is individually heated, twisted, and wound onto another spool. The yarn is considered to be first quality if the thread from the individual spools can be knitted together in a fabric that has uniform bulk and uniform dyeability. In order to achieve this result, it is necessary that the conditions on the texturizing machine be within very close tolerances from thread to thread position. The control of the heat applied to the yarn on a position to position basis is important to the production of first quality uniformly texturized yarn. Allegedly, if there are significant heat variations between the different thread positions, the individual spools of thread when knitted together will not dye uniformly but will produce a streaked appearance referred to in the industry as barre, and have other defective possibilities.

The defendant Barmag Barmer Maschinenfabrik Aktiengesellschaft (hereinafter referred to as German Barmag) is engaged in the business of manufacturing machinery for texturizing yarn, and the machines are sold in this country through its subsidiary, the defendant American Barmag Corporation (hereinafter referred to as American Barmag.) During the year 1970, the plaintiff purchased twenty-six machines manufactured by the defendant German Barmag and sold by the defendant American Barmag. The present suit arises out of plaintiff's claim that the Barmag machines were and are incapable of producing a first quality uniformly texturized yarn as represented.

The complaint contains several counts. The First Count alleges the circumstances leading up to the purchase of the machines and the various representations and guarantees that were made by the defendants with respect to the machines. Among other claims it is alleged that the defendants represented that the Barmag machines could control the critical process of uniformly heating the yarn at all thread positions during the texturizing process within a tolerance of plus or minus one-half degree Centigrade. The First Count seeks relief on the basis of breach of expressed and implied warranties.

The Third Count is based on fraud, common law and statutory. Count Three refers back to and incorporates the specific representations alleged in the First Count. It is then alleged that these various representations were false and known to the defendants to be false and were made for the purpose of inducing plaintiff to purchase the machines. The First Count as incorporated also alleged that the plaintiff relied upon the purported expertise of the defendants in purchasing the machines. These allegations in the Third Count make out a claim for common law fraud.

In addition to its right to recover on the basis of common law fraud, plaintiff also claims in Count Three the right to recover on the basis of a violation of certain sections of the Securities Act and Rule 10(b)(5) of the Securities and Exchange Commission. Thus, Count Three contains allegations for liability under several similar legal theories which for the sake of convenience are lumped together in one count.[2]

2. 19. Upon information and belief, the representations of the defendants with respect to the capabilities and capacities of the Machine and the expertise of its personnel, availability of spare parts and other representations designed to induce plaintiff to purchase said Machines were false and fraudulent and known to defendant to be false or were made with a reckless disregard as to the truth thereof. The said Machines would not produce and are incapable of producing first quality uniformly texturized yarn, and said Machines are unmerchantable and unfit for the purpose for which they were purchased, all of which defendants knew or should have known when the Machines were sold to plaintiff.

20. Defendant American Barmag represented to plaintiff that for the convenience of the defendant German Barmag the payments for the unpaid balance on the Machines should be made in Deutschemarks and assured plaintiff that plain-

Defendants' motion did not detail the specifics of their attack on the Third Count, and, initially, it appeared that their position would be that fraud was not alleged. As will be seen from the allegations quoted (Note 2 supra) fraud is alleged.

■ The plaintiff alleges that numerous untrue representations were made to the plaintiff to induce it to purchase the machines, that the defendants knew the statements were untrue or made them with a reckless disregard as to their truth or falsity, that plaintiff relied upon the claimed expertise of the defendants with respect to said representations and that as a result of the falsity of the representations plaintiff has sustained damages in that the machines will not produce the product for which they were purchased. These allegations clearly state a claim for fraud. There have been numerous cases holding that a claim for fraud is stated where the plaintiff alleges a representation, its falsity, its materiality, the speaker's knowledge of its falsity and his intent that it should be acted upon and the other party's reliance upon the truth of the representation and his subsequent injury. E.g., Lawson v. Citizens & Southern National Bank of South Carolina, 255 S.C. 517, 180 S.E.2d 206 (1971) [3]; Gordon v. Fidelity and Casualty Company of New York, 238 S.C. 438, 120 S.E.2d 509 (1961) [4]; Warr v. Carolina Power & Light Company, 237 S.C. 121, 115 S.E.2d 799 (1960).

The main thrust of defendants' motion is that the provisions of the Securities Act [5] and the Rules and

---

tiff would not be harmed by making payments for the Machines in Deutschemarks rather than United States currency. At said time the defendants knew, but deliberately failed to inform plaintiff, that the Deutschemark was soon to be substantially revalued to plaintiff's detriment. The subsequent revaluation of the Deutschemark substantially increased the costs of the Machines to plaintiff.

21. As a part of the scheme and conspiracy between defendants to cheat and defraud plaintiff, defendants, by the false and fraudulent representations referred to herein and in the First Count as incorporated induced plaintiff to deliver to American Barmag the ten bills of exchange, referred to in paragraph 14 of the First Count, payable to the defendant German Barmag, which delivery took place in interstate commerce through the United States mail and constituted a violation by defendants of Section 17 of the Securities Act, 15 U.S.C., Section 77q, Section 10(b) of the Securities Act, 15 U.S.C., Section 78j(b) and Rule 10(b) (5) of the Securities and Exchange Commission, 17 CFR 240.10(b) (f).

22. As a direct and proximate result of the false and fraudulent representations of the defendants, plaintiff has suffered substantial damages and is entitled to the remedies and damages alleged in paragraph fifteen of the First Count or alternatively to the remedies and damages alleged in paragraph seventeen of the Second Count and additionally is entitled to recover punitive damages and a reasonable attorney's fee.

3. "Unquestionably, the concealment of material facts that one is, under the circumstances, bound to disclose may constitute actionable fraud . . . It is, therefore, equally competent for a court to relieve against fraud whether it is committed by suppression of the truth—that is, by concealment—or by suppression of falsehood." [180 S.E.2d at page 208].

4. This case holds nondisclosure may become fraudulent when it is the duty of the party having knowledge of facts to uncover them to the other party . . . when the latter party reposes trust in the former, etc.—there must be the element of *duty*, among others.

5. Section 77q(a) (15 U.S.C.A. § 77q(a)) of the Securities Act provides:
   It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—
   (1) to employ any device, scheme, or artifice to defraud, or
   (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

Regulations [6] of the Securities and Exchange Commission are inapplicable to a controversy of this nature and are insufficient to set forth a claim against defendants. Basically, defendants contend that the bills of exchange which plaintiff sent to German Barmag (representing the balance of the purchase price on the 26 machines) are not "securities" within the meaning of the Securities Act (15 U.S.C. § 77a et seq.).

Paragraphs 20 and 21 (supra), of the complaint, along with the other matters alleged in the Third Count, form the additional basis for a claim for fraud under the Securities Act. It is alleged that the defendants, as a part of the fraudulent scheme to induce plaintiff to purchase the machines, agreed to allow plaintiff to pay for part of the purchase price through the use of ten bills of exchange. Further, it is alleged that the defendants represented to plaintiff that for the convenience of the defendant German Barmag the bills of exchange should be payable in deutschemarks and that plaintiff would not be harmed by making payments in deutschemarks rather than United States currency and that at the time the defendants knew but failed to inform plaintiff that the deutschemark would soon be substantially revalued, thereby increasing the cost of the payments to the plaintiff. It should be here noted that plaintiff's claim under the Securities Act is not dependent upon the alleged representation with respect to the payments to be made in deutschemarks. The bills of exchange would have been given in any event, and it is plaintiff's contention that the execution of the bills of exchange was induced by the many fraudulent representations made to induce the plaintiff to purchase the machines. The transfer and acceptance of the bills of exchange allegedly took place in interstate commerce through the United States mails and is the basis for jurisdiction under the relevant statutes of the Securities Act.

■■ It is well established that a violation of the noted [7] statutes and rule gives rise to a private right of action and applies to private transactions between individuals or corporations. Superintendent of Insurance of State of New York v. Bankers Life & Casualty Company, 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971); Tcherepnin v. Knight, 389 U.S. 332, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967); Llanos v. United States, 206 F.2d 852 (9th Cir. 1953); Whitlow & Associates, Ltd. v. Intermountain Brokers, Inc., 252 F.Supp. 943 (D.Haw.1966); Movielab, Inc. v. Berkey

---

(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

Section 78j(b) (15 U.S.C.A. § 78j(b)) provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange

—

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

\*      \*      \*      \*      \*

6. Rule 10b-5 (7 C.F.R. 240.10(B) (5)) of the Securities and Exchange Commission provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,

(a) to employ any device, scheme, or artifice to defraud,

(b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

7. Footnotes 5 and 6, supra.

Photo, Inc., 321 F.Supp. 806 (S.D.N.Y. 1970). As indicated in the Superintendent of Insurance of State of New York case, supra, the statutes are to be read flexibly and broadly and are not to be construed as "limited to preserving the integrity of the securities markets." If there is a "sale" of a "security" with fraud used in connection with the sale and a connection with interstate commerce through the mails or otherwise, the statutes apply.

▆▆▆ This court finds the notes are sufficiently within the definition of a "security" and that the "sale" requirement is satisfied. Initially, it cannot be denied that the bills of exchange were "certain evidence of indebtedness." Landay v. United States (CCA 6 1939) 108 F.2d 698, United States v. Monjar (CCA 3 1944), 147 F.2d 916, 920. The definition of security in the Act[8] is unequivocal and all-embracing (except as exempted by Section 77 c as applied here). Movielab, Inc. v. Berkey Photo, Inc. (S.D.N.Y.1970), 321 F.Supp. 806. The Act provides that "the term 'security' means any note . . . . or any certificate of interest or participation in . . . . any of the foregoing." Lehigh Valley Trust Co. v. Central National Bank of Jacksonville (CCA 5 1969), 409 F.2d 989. Llanos v. United States (CCA 9 1953) 206 F.2d 852, cert. denied

(1954) 346 U.S. 923, 74 S.Ct. 310, 98 L. Ed. 417. Congress did not intend for a strict construction of the term security. Llanos v. United States, supra, Whitlow & Associates, Ltd. v. Intermountain Brokers, Inc. (D.Haw.1966), 252 F.Supp. 943, S.E.C. v. Vanco Inc. (D.N.J.1958), 166 F.Supp. 422, S.E.C. v. Addison (N. D.Tex.1961), 194 F.Supp. 709.

In addition to 15 U.S.C. § 77 b(1), supra, 15 U.S.C. § 77q provides that the term security means "any note, . . . evidence of indebtedness, . . . or, in general, any interest or instrument commonly known as a 'security' " . . . and 15 U.S.C.A. Sec. 78c(a)(10)[9], applicable to 15 U.S.C.A. Sec. 78j and Rule 10b–5, defines a security as "any note, . . . or in general, any instrument commonly known as a 'security' ". The Supreme Court in Superintendent of Insurance of State of New York case, supra, and Tcherepnin v. Knight, supra, have indicated that these generic terms are to be given a very broad definition and that the ending phrase, i.e., any other instrument commonly known as a "security" is to be broadly defined and not to be limited by the previous terms outlined. A bill of exchange, of course, is merely a form of a note. Upon acceptance it is a promise to pay to the order of a certain person and it is negotiable. In fact, the defendants have entered ma-

8. 15 U.S.C.A. § 77b(1) provides:
    The term "security" means any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, or, in general, any interest or instrument commonly known as a "security", or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing.

9. 15 U.S.C. § 78c(a) (10) provides:
    The term "security" means any note, stock, treasury stock, bond, debenture,

certificate of interest or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease, any collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit, for a security, or in general, any instrument commonly known as a "security"; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing; but shall not include currency or any note, draft, bill or exchange, or banker's acceptance which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited.

terial in the record showing that the bills of exchange have been negotiated to a third party.

Other decisions support a broad (coverage) definition of the word "security", as defined or considered in the Securities Act. See In re Los Angeles Land and Investments, Ltd. (D.Haw.1968) 282 F.Supp. 448; United States v. Roselli (CCA 9, 1970), 432 F.2d 879; Rekant v. Desser (CCA 5, 1970) 425 F.2d 872, Lawrence v. Securities and Exchange Commission (CCA 1, 1968), 398 F.2d 276.

■ For the reasons stated above, this court adjudges that the bills of exchange constitute "securities" and their issuance and acceptance constituted a "sale". The transfer of the bills of exchange through the United States mails satisfied the interstate commerce provisions of the statutes and the fraudulent representations and failure to reveal material information supplies the fraudulent elements. Clearly, plaintiff has alleged facts sufficient to constitute a claim under the Securities Act as well as a claim for common law fraud.

Defendants' motion to strike is overruled and denied.

And it is so ordered.